[No. 12869-5-III.   Division Three.   November 29, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. PAUL K. McNICHOLS, *Respondent*.

---

Donald C. Brockett, Prosecuting Attorney, and Carlin M. Jude and Kevin M. Korsmo, Deputies, for petitioner.

Carl E. Hueber and Winston & Cashatt, for respondent.

SCHULTHEIS, J. — Spokane County Superior Court reversed a district court DWI conviction after finding the State's agents frustrated Defendant Paul McNichols' attempts to obtain an independent blood test. The court dismissed the charge and awarded Mr. McNichols costs including statutory attorney fees. On appeal the State contends county jail officials had no duty to help Mr. McNichols obtain a blood test; but if there was a violation of Mr. McNichols' statutory right to an independent test, suppression of the State's BAC Verifier DataMaster test results is the appropriate remedy. The State also contends the court erred by awarding statutory attorney fees. We affirm.

At 11 p.m. on April 13, 1991, Washington State Patrol Trooper Pete Powell stopped Mr. McNichols after observing him drive through a stop sign at about 45 miles per hour. Mr. McNichols seemed intoxicated. When Mr. McNichols failed several field sobriety tests, Trooper Powell arrested him for driving under the influence of liquor and transported him to the Public Safety Building for a breath test.

Mr. McNichols was advised of the consequences of refusing to take the breath test, and of his rights to consult an attorney and to have an additional test administered by a qualified person of his own choosing. He spent 20 minutes trying to telephone his father, then telephoned the on-duty public defender. Afterward, Mr. McNichols submitted to the breath test. The first sample, taken at 12:09 a.m., registered .26 and the second sample, taken at 12:13 a.m., registered .24. Mr. McNichols was then turned over to the Spokane County Jail for booking.

There is an unresolved dispute whether Mr. McNichols told Trooper Powell he wanted an additional test, but there is no dispute that he requested a blood test from jail officials by 12:30 a.m. At his insistence his request was noted on the jail's processing form. Jail personnel did not administer a blood test, did not expedite the booking and release process so he could leave to obtain one, and did not inform Mr. McNichols that he could have someone come to the jail to

administer a test; however, Mr. McNichols had free access to the telephones from 12:30 until 1:45, and he spoke with an attorney before taking the breath tests.

At approximately 1:45 a.m. it was determined that Mr. McNichols qualified for release on his own recognizance on condition he could arrange transportation. He called a friend to give him a ride home. Mr. McNichols received his personal effects at 2:38 a.m. and left with the friend at approximately 3 a.m. At that time he decided not to seek an additional test because he believed too much time had elapsed for it to be effective. The amount of time he was in custody was apparently normal, due to the paperwork to be completed and the fact it was a weekend night.

Mr. McNichols moved to either suppress the BAC results or to dismiss the charge on the basis the State unreasonably interfered with his efforts to obtain a blood test. Noting that RCW 46.61.506(5) permits admission of the State's BAC evidence even when the defendant fails or is unable to obtain an additional test, but that case law proscribes the State from frustrating a defendant's attempts to obtain an independent test, *Blaine v. Suess*, 93 Wn.2d 722, 612 P.2d 789 (1980); *State v. Reed*, 36 Wn. App. 193, 672 P.2d 1277 (1983), *review denied*, 100 Wn.2d 1041 (1984), the District Court concluded the State was not responsible for Mr. McNichols' failure to obtain a test. The court denied both motions. On June 24, 1992, the case was submitted to the court on the record. The court found Mr. McNichols guilty, sentenced him, and stayed his sentence pending appeal.

On appeal to the Superior Court, Mr. McNichols contended the State had an affirmative duty to take reasonable steps to ensure that he had an opportunity to exercise his statutory right to an additional test. He argued the failure of the jail officials to administer a blood test, or to expedite processing so that he could obtain his release and timely seek his own test, or at the very minimum to inform him he should call someone to come to the jail to administer a test, frustrated his efforts to exercise his right. He further argued dismissal was the appropriate remedy for the violation.

The Superior Court held the State did not have an affirmative duty to administer a blood test or otherwise take action to help Mr. McNichols obtain one, but it did have a duty to inform him that he would be processed normally and that if he wanted a blood test, it was his responsibility to use the available telephones and make the necessary arrangements. The court dismissed the charge and denied the State's motion for reconsideration. We granted discretionary review.

■ The right of a DWI arrestee to have an additional scientific test of his own choosing is secured by statute. *Blaine*, at 724-25; RCW 46.61.506(5); RCW 46.20.308(2). The right of a defendant to gather possibly exculpatory evidence is secured by constitutional standards of due process. *Blaine*, at 725-28. "[T]he question of whether an accused was afforded a 'reasonable opportunity' to gather evidence in his own defense depends heavily on the particular circumstances." *Blaine*, at 727.

In *Blaine*, the defendant requested additional tests after submitting to a Breathalyzer test. The administering officer informed the defendant he would be transported to a hospital for the tests. Instead, he was taken to jail. On the way, he renewed his request for a blood test. The court concluded the defendant did everything a reasonable person could do under the circumstances to implement his right to an additional test. Since the defendant was in custody, he had no realistic opportunity to be tested except by stating his request to the authorities. *Blaine*, at 727-28. The court held the police unreasonably interfered with the defendant's effort to procure probative evidence, reversed the conviction and dismissed the case.

Here, Mr. McNichols requested an independent test while being booked into jail. He had no realistic opportunity to be tested while in custody except by stating his request to the authorities and relying upon their assistance. The booking officer told him the jail does not administer tests and he should have made his request to the arresting officer.[1] The

---

[1] Mr. McNichols swore he did so; Trooper Powell swore he did not.

booking officer then apparently told Mr. McNichols he could use the telephones to arrange for a test once he was released from the facility. By leading Mr. McNichols to believe he was too late to obtain a test through the arresting officer and could not otherwise obtain a test until after his release, the booking officer unreasonably interfered with Mr. McNichols' right to gather evidence.

The jailers had a duty to inform Mr. McNichols that they were not required to help him obtain a test, but that he could have someone come to the jail to administer a test and he could use the telephones to make necessary arrangements if that is what he wanted. Requiring jailers to impart such information is similar to requiring them to provide a list of on-call public defenders and their telephone numbers to DWI arrestees, in addition to telephone access, to give effect to the right to counsel. *See Spokane v. Kruger*, 116 Wn.2d 135, 137-39, 803 P.2d 305 (1991). The requirement is easily implemented and addresses the reality of the situation. It is disingenuous for the State to claim an arrestee has a reasonable opportunity to exercise his right to obtain an additional test when he is jailed during the critical time period, cannot leave to transport himself to a testing facility and does not know that he can have someone come to the jail to administer a test.

The State contends jail personnel are not responsible for implementation of the implied consent statute, RCW 46.20.308, which directs the behavior of law enforcement officers, and argues there are important policy reasons for requiring DWI arrestees to direct their requests for independent tests only to the law enforcement officers who arrest them. The prohibition against frustration of an accused's attempt to obtain relevant evidence is derived from the constitutional right to due process and a fair trial; it applies to all government employees. A DWI arrestee is in custody of agents of the State, whether they are police officers or jail officials, and has limited ability to obtain a test. The statutory right to an additional test is worthless if an individual cannot obtain it; to force DWI arrestees to obtain the test through the police or forgo it altogether would eviscerate the right.

The State contends the proper remedy for violation of Mr. McNichols' right to obtain an independent blood test is suppression of the State's breath test results. It argues the purpose of the independent test is to contest the accuracy of the State's breath test;[2] therefore, if a defendant is unfairly deprived of an opportunity to challenge the State's test results, denying use of those results levels the playing field and leaves the defendant free to contest any other evidence of intoxication introduced by the State.

We recognize dismissal is an extraordinary remedy, which is unwarranted when suppression of evidence will eliminate any prejudice caused by governmental misconduct. *Kruger*, at 144; *Seattle v. Orwick*, 113 Wn.2d 823, 830, 784 P.2d 161 (1989). *Kruger* collects and addresses relevant cases from Washington and other jurisdictions, and concludes suppression of tainted evidence, rather than dismissal of charges, is the proper remedy for violation of a DWI arrestee's court rule right to counsel. Suppression is inadequate in the present case.

In a DWI case the defendant's condition at the time of his arrest is critical to his defense. To defend against the charge against him, Mr. McNichols would have to present evidence that he was not under the influence of intoxicating liquor at the time of his arrest. That is true regardless whether the State introduces BAC test results or other evidence of intoxication. The State's interference with Mr. McNichols' right to obtain an independent alcohol concentration test foreclosed a fair trial by forever depriving him of material evidence which could potentially have supported a claim that he was innocent. Suppression of the State's BAC test results would not eliminate the prejudice because a favorable blood test is reliable evidence of nonintoxication that could be used to defend against other proof of intoxica-

---

[2]Another purpose is to provide an efficient means of gathering reliable evidence of nonintoxication, generally. *Greenwood v. Department of Motor Vehicles*, 13 Wn. App. 624, 628, 536 P.2d 644, 98 A.L.R.3d 566 (1975). As the court noted in *Blaine*, at 725, several Washington cases have affirmed a DWI arrestee's right to undergo a test of his own choosing after he has refused the police-administered test.

tion.Because the error cannot be remedied by a new trial, dismissal is the appropriate remedy. *Blaine*, at 728. *See also State v. Peterson*, 227 Mont. 418, 739 P.2d 958 (1987); *McNutt v. Superior Court*, 133 Ariz. 7, 648 P.2d 122 (1982).

The State contends the Superior Court erred by awarding Mr. McNichols statutory attorney fees pursuant to RALJ 9.3(c). The State waived any objection by not complying with RALJ 9.3(d), which requires the filing of objections to cost bills within 10 days of service of the cost bill. The State missed the deadline by a week, filing its objection 17 days after service. We decline to address this issue.

We deny Mr. McNichols' request for an award of attorney fees on appeal. He cites RAP 18.1, but the rule authorizes an award only if applicable law grants him the right to recover fees. Mr. McNichols has not directed us to any applicable law.

The judgment of the Superior Court is affirmed.

THOMPSON, C.J., and MUNSON, J., concur.

Review granted at 126 Wn.2d 1014 (1995).