906 P.2d 329 (1995)
128 Wash.2d 242
STATE of Washington, Petitioner,
v.
Paul K. McNICHOLS, Respondent.
No. 62431-3.
Supreme Court of Washington, En Banc.
November 30, 1995.
*331 Honorable Jim Sweetser, Spokane County Prosecutor, Kevin M. Korsmo, Deputy Prosecutor, Spokane, for petitioner.
Winston & Cashatt, Carl E. Hueber, Thomas M. McBride, Spokane, for respondent.
*330 MADSEN, Justice.
This case arises out of the conviction of Paul K. McNichols of driving while intoxicated. At issue is (1) whether Washington's implied consent statute imposes an affirmative duty on jail personnel to advise DWI suspects regarding additional testing; and (2) whether jail personnel interfered with McNichol's attempt to obtain an independent blood alcohol test.

FACTS
On April 13, 1991, at approximately 11:00 p.m., Washington State Trooper Pete Powell observed McNichols drive through a stop sign at about 45 miles per hour. Powell followed McNichols for one-quarter of a mile before pulling him over. When McNichols exited his car he was swaying and had an unsteady balance. Powell smelled a strong odor of alcohol and found McNichols' eyes to be bloodshot and slow to focus. McNichols failed a field sobriety test and was arrested for driving while intoxicated (DWI). He was transported to the Public Safety Building for a BAC Verifier-Datamaster (BAC) test.
McNichols was advised of his Miranda rights and was informed of his rights under Washington's implied consent statute. See RCW 46.20.308(1) and (2); RCW 46.61.506(5). Before submitting to the BAC, McNichols spent twenty minutes attempting to telephone his father. Unable to reach him, McNichols then called the on-duty public defender. At 12:09 a.m. McNichols submitted to the BAC test. The first sample registered .26. The second sample was given at 12:13 a.m. and registered .24. Shortly thereafter McNichols was transferred to the Spokane County Jail for booking.
At the jail McNichols asked jail officials for a blood test. This request was noted, at McNichols' insistence, on a jail processing form. The booking officer, Terry Chavens, testified that while he could not recall the exact information he gave McNichols regarding additional testing, he did recall informing McNichols that jail personnel did not perform blood tests. Further, Chavens said that as part of a routine statement given to DWI suspects it was possible that he informed McNichols that he could arrange to have his physician draw blood and that he would have use of the telephones to "notify or arrange for a blood test once he's released from the facility." Clerk's Papers, at 96. Between 12:30 a.m. and 1:45 a.m. McNichols had access to a telephone.
*332 Another jail official, Officer John Holmes, testified that he overheard McNichols request a blood test from Chavens. Holmes stated that he heard Chavens explain to McNichols "that the jail does not administer blood tests and that he should have taken that process up with the arresting officer." Clerk's Papers, at 103.
At approximately 1:45 a.m. it was determined that McNichols qualified for release on his own recognizance. McNichols called a friend to arrange for a ride home. At about 2:40 a.m. he was given his personal effects. He left the jail with a friend at approximately 3:00 a.m. and went home. McNichols stated that he chose not to have a blood test after his release from jail for he believed that too much time had passed since his arrest for him to obtain an accurate result.
Prior to trial, McNichols moved to dismiss the charge, or in the alternative to suppress the State's BAC test results, on grounds that law enforcement personnel had frustrated his efforts to obtain an independent blood test. The motion was denied. Subsequently, McNichols was convicted following a stipulated facts trial. Judgment was entered on June 24, 1992 and sentencing was stayed pending appeal.
The Superior Court for Spokane County reversed the district court decision after finding that law enforcement personnel had frustrated McNichols' efforts to obtain an independent blood test. The court dismissed the charge and awarded McNichols costs including statutory attorney fees. The State appealed this decision to the Court of Appeals, Division III.
The court of appeals granted discretionary review and affirmed the superior court decision holding that "the booking officer unreasonably interfered with Mr. McNichols' right to gather evidence." State v. McNichols, 76 Wash.App. 283, 288, 884 P.2d 620 (1994). The court found dismissal to be the proper remedy since the error could not be remedied by a new trial. Further, the court declined to address the issue of attorney fees for it found that the State waived any objection by not complying with RALJ 9.3(d), which requires the filing of objections to cost bills within ten days of service of the cost bill. The record shows that the State filed an objection seventeen days after service.
We granted discretionary review.

ANALYSIS
The first issue before this court is whether jail personnel have an affirmative duty, under Washington's implied consent statute, to advise DWI suspects regarding independent blood alcohol testing.
Washington's implied consent statute provides in pertinent part that:
(1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.
(2) The test or tests of breath shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor.... The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

RCW 46.20.308(1) and (2) (emphasis added).
The State argues that Washington's implied consent statute directs the behavior of a "law enforcement officer" only, and policy reasons support limiting obligations under the statute solely to law enforcement personnel involved in the arrest and investigation of *333 a DWI case. The State contends that most jail personnel "are not trained in enforcing criminal statutes and can hardly be expected to know what is required of law enforcement officers." Pet. for Review at 7.
McNichols argues that jail personnel are state officials having custody during the booking procedure of DWI suspects, and therefore are not relieved of the duty to afford DWI suspects reasonable opportunity to obtain blood tests without interference.
We agree with the court of appeals' holding which held that the implied consent statute applies to all government employees. McNichols, 76 Wash.App. at 288, 884 P.2d 620. Where an individual acts on the authority of the State, he or she is an agent of the State and has a duty to enforce the laws. See State v. Sargent, 111 Wash.2d 641, 642, 762 P.2d 1127 (1988) (State violated the defendant's Fifth and Sixth Amendment rights when a probation officer preparing a sentencing statement failed to give the defendant Miranda warnings and assistance of counsel); Kuehn v. Renton School Dist., 103 Wash.2d 594, 600, 694 P.2d 1078 (1985) (when a private person acts under the authority of the State, Fourth Amendment protections apply). Accordingly, we find that jail personnel, as agents of the State, are required to afford DWI suspects reasonable opportunity to obtain blood tests without interference. As the court of appeals reasoned, the statutory right to additional tests is worthless if unobtainable, and forcing a DWI suspect to obtain tests only through police would eviscerate the right. 76 Wash.App. at 288, 884 P.2d 620.
The court of appeals went further, however, holding that jail personnel have an affirmative duty to inform a DWI suspect that (1) a qualified person of the suspect's choosing can come to the jail to administer an independent test; and (2) the suspect can use the telephones to make the necessary arrangements if that is what the suspect wishes to do. McNichols, 76 Wash.App. at 288, 884 P.2d 620. Neither the language of the statute nor the case law supports imposition of these duties.
RCW 46.20.308(2) instructs the officer administering the BAC test to inform the DWI suspect of his or her rights under the statute. State v. Bartels, 112 Wash.2d 882, 886, 774 P.2d 1183 (1989); City of Blaine v. Suess, 93 Wash.2d 722, 725, 612 P.2d 789 (1980). The importance of the statutory requirement is the protection of the accused's right to fundamental fairness, which is built into the implied consent procedure. Bartels, 112 Wash.2d at 886, 774 P.2d 1183; accord State v. Canaday, 90 Wash.2d 808, 817, 585 P.2d 1185 (1978). The implied consent warnings enable the accused to make an informed and intelligent decision about how to exercise his or her statutory right. Bartels, 112 Wash.2d at 888, 774 P.2d 1183; State v. Whitman County Dist. Court, 105 Wash.2d 278, 282, 714 P.2d 1183 (1986). There is no language in the statute imposing an affirmative duty on the State to provide a DWI suspect with additional advice beyond the warnings. See State v. Bostrom, 127 Wash.2d 580, 588, 902 P.2d 157 (1995) (under plain language of implied consent statute officers are not required to give additional warnings regarding administrative consequences of a 0.10 breath test). Moreover, the court may not "graft onto the implied consent statute any additional warnings not contained in the plain language of that statute." Id. at 587, 902 P.2d 157.
While the State must afford a DWI suspect a reasonable opportunity, under the circumstances, to obtain additional tests, Blaine, 93 Wash.2d at 725-26, 612 P.2d 789, this does not require the State to administer additional tests. State v. Stannard, 109 Wash.2d 29, 36, 742 P.2d 1244 (1987). Moreover, the State has no duty to aid the accused in obtaining exculpatory evidence. State v. Entzel, 116 Wash.2d 435, 442, 805 P.2d 228 (1991); see also State v. Judge, 100 Wash.2d 706, 717, 675 P.2d 219 (1984); State v. Howard, 52 Wash.App. 12, 16, 756 P.2d 1324 (1988), review denied, 112 Wash.2d 1010 (1989). Defense counsel, not the State, is the appropriate person to advise the DWI suspect of the best means of gathering potentially exculpatory evidence because a DWI suspect is entitled to be advised of his or her right to counsel prior to a state-administered test. State v. Entzel, 116 Wash.2d at 443, *334 805 P.2d 228; State v. Staeheli, 102 Wash.2d 305, 309, 685 P.2d 591 (1984); State ex rel. Juckett v. Evergreen Dist. Court, 100 Wash.2d 824, 831, 675 P.2d 599 (1984); CrRLJ 3.1(a) and (b).
When Powell informed McNichols of his statutory rights, the State met its duty under the implied consent statute. McNichols consulted a public defender before submitting to the breath test. The record shows that he had access to the telephones between 12:00 a.m. when he was booked to 1:45 a.m. Had McNichols wanted explicit information on how to make the necessary arrangements to obtain an independent blood test, counsel could have provided him with that information. We hold that jail personnel do not have an affirmative duty to advise a DWI suspect on obtaining additional tests.
The next issue is whether jail personnel interfered with McNichols' attempt to obtain a blood test. The court of appeals held that the booking officer unreasonably interfered with McNichols' right to gather evidence by providing misleading information. McNichols, 76 Wash.App. at 288, 884 P.2d 620. The court reasoned that McNichols had no realistic opportunity for additional testing while in custody except for asking assistance from jail personnel. Id. at 287, 884 P.2d 620. The State contends that this conclusion is not valid because "[w]here `frustration' has been found, it has involved detrimental reliance by a defendant on an unfulfilled promise by the arresting officer." Pet. of Res't, at 9-10.
McNichols argues that the State frustrated his attempts to obtain additional tests when jail personnel led him to believe that (1) the arresting officer was the only official able to assist him in obtaining an independent blood test; therefore, he could obtain a blood test only after he was released from jail; and (2) jail personnel delayed his release from jail, thereby making any attempt to obtain a blood test futile.
RCW 46.61.506(5) provides:
The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his or her own choosing administer one or more tests in addition to any administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.
This provision grants a DWI suspect a right to additional testing to allow the suspect "to obtain evidence with which to impeach the results of the state-administered test." Bartels, 112 Wash.2d at 886, 774 P.2d 1183; accord Stannard, 109 Wash.2d at 35, 742 P.2d 1244; State v. Dunivin, 65 Wash. App. 501, 505, 828 P.2d 1150, review denied, 120 Wash.2d 1002, 838 P.2d 1143 (1992). This is in keeping with a defendant's constitutional due process right to gather evidence in his own defense. See California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984); Blaine, 93 Wash.2d at 725, 612 P.2d 789.
While "law enforcement authorities have no duty to volunteer to arrange for testing, they must not thwart an accused's attempts to make such arrangements." Blaine, 93 Wash.2d, at 728, 612 P.2d 789. In Blaine, the defendant, a Swiss national with poor English skills, communicated to the arresting officer his desire to obtain additional testing. Id. at 724, 727, 612 P.2d 789. Police assured the defendant that he would be transported to a local hospital for testing. Id. at 727, 612 P.2d 789. On route to the hospital, the defendant again reiterated his wish for additional testing. Id. At that point the officer informed the defendant that he was going to jail and no testing would be available at the facility. Id. The defendant was held overnight and made no further requests for additional testing. Id. at 724, 612 P.2d 789. At issue was whether the defendant was afforded a reasonable opportunity to gather evidence in his own defense. Id. at 725, 612 P.2d 789.
In resolving this issue the court reasoned that since the defendant "was in custody, he had no realistic opportunity to be tested except by stating his wish to the authorities." Blaine, 93 Wash.2d at 727, 612 P.2d 789. Moreover, the court found that the defendant "did everything a reasonable person could do *335 under the circumstances to implement his right to an additional test." Id. at 727-28, 612 P.2d 789. The court determined that whether a defendant was afforded that opportunity "depends heavily on the particular circumstances." Id. at 727, 612 P.2d 789. The court dismissed the case after finding that the police did unreasonably interfere with the defendant's efforts to obtain probative evidence. Id. at 728, 612 P.2d 789.
In contrast, the court of appeals in State v. Reed, 36 Wash.App. 193, 672 P.2d 1277 (1983), review denied, 100 Wash.2d 1041 (1984), found that the officers' conduct in refusing to transport a suspect to the hospital for an additional test did not constitute interference. In that case, the defendant was arrested for driving while intoxicated and was transported to the Grandview police station. Id. at 194, 672 P.2d 1277. The defendant submitted to a breath test and was issued a citation. Id. He then made two requests to be transported to one of two local hospitals, both within approximately seven miles from the station, for additional testing. Id. Police denied his requests. Id. The defendant had unrestricted telephone access and made several calls. Id. A Grandview police officer, acting on his own accord, arranged for a licensed physician's assistant to go to the jail to draw a blood sample, but the defendant rejected that offer and again expressed his desire to be taken to the hospital. Id. At issue was whether the police had an affirmative duty to transport the accused to a hospital to obtain additional tests. Id. at 195, 672 P.2d 1277. The court, relying on Blaine, concluded that under the circumstances police had not unreasonably thwarted the defendant's attempts to obtain additional testing by not transporting him to the hospital. Id. at 196, 672 P.2d 1277. The court also noted that its holding was not intended to preclude the transportation of a defendant to a hospital under different circumstances. Id.
We conclude that whether the State has unreasonably interfered with a DWI suspect's right to additional testing under the implied consent laws must be determined on a case by case basis. While "detrimental reliance" on a promise made by an arresting officer is a factor to consider, as the State suggests, it is not determinative. In Blaine this court was also influenced by the fact that the suspect was a Swiss national with poor English skills, that the officer told the suspect he could not have a blood test in the jail, and the suspect was held in jail overnight. When the court in Reed denied suppression of the BAC results, it was influenced by the accessibility of a telephone and the offer by the officer to arrange for a technician to draw blood at the jail.
In the present case the authorities did not promise to assist McNichols in securing additional testing. The authorities have no duty to volunteer to arrange for testing. Blaine, 93 Wash.2d at 728, 612 P.2d 789. Although an inference may be drawn from the corrections officer's statements to McNichols that he had missed his only opportunity for a blood test by failing to make his request to the arresting officer, he was also given unlimited access to the telephone and told that he could make his own arrangements. Unlike the suspect in Blaine, McNichols speaks English. And most importantly, McNichols understood and exercised his right to counsel earlier that evening. That McNichols felt misled by authorities could have easily been remedied had McNichols contacted the on-duty public defender to whom he had turned earlier for advice. For whatever reason he decided not to call a qualified person to take a blood test or to seek advice of counsel. We find that under the circumstances the jail personnel did not unreasonably interfere with McNichols' right to obtain additional testing.
Finally, McNichols claims that jail personnel intentionally delayed his release from jail, but he offers no evidence to support this contention. The arrest occurred on the weekend, the busiest time of the week for jail personnel. McNichols was processed and determined to be qualified for release on his own recognizance. We find that the jail personnel did not interfere with McNichols' efforts to obtain additional testing by delaying his release from custody.
In view of the foregoing, we need not reach the State's argument that suppression, rather than dismissal, is the proper remedy where the state interferes with a DWI suspect's *336 efforts to obtain independent testing. Nor must we address the issue of whether statutory attorney fees are recoverable in criminal proceedings by the prevailing party as costs in a RALJ appeal since our reversal results also in a reversal of the award.
The court of appeals' holding affirming the superior court's reversal of McNichols' conviction is reversed and the conviction is reinstated.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, TALMADGE and PEKELIS, JJ., concur.