# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| HECTOR LOUIE RESSY,<br><br>Appellant,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS ("DOC"); STEVEN BURRISS and JANE DOE BURRISS and the marital community composed thereof, in his personal capacity and in his capacity as a Community Corrections Officer of the DOC; CAROLE I. RIGNEY and JOHN DOE RIGNEY and the marital community composed thereof, in her personal capacity and in her capacity as a Community Corrections Supervisor; and DOES 1-10,<br><br>Respondents. | No. 68975-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: September 23, 2013 |



LEACH, C.J. — Hector Ressy alleges that Department of Corrections (DOC) personnel filed a false declaration and probation violation report in retaliation for grievances he filed against his community corrections officer (CCO). Because the allegations in the declaration were not false and because the failure to update the declaration in light of subsequent events is insufficient to support Ressy's claims for civil rights violations and various torts, we affirm the superior court's dismissal of Ressy's claims on summary judgment.

FACTS

In 2007, a jury convicted Ressy of contacting Antonia Thomas in violation of a domestic violence no-contact order. The court imposed a suspended sentence with 24 months of probation. The judgment and sentence and a no-contact order required Ressy to "successfully complete a state certified domestic violence treatment program" and to have no contact with Antonia Thomas and Destini Thomas. The supervision conditions included a requirement that Ressy "[a]bide by written or verbal instructions issued by the community corrections officer." The court also imposed financial obligations of $500.00 to be paid "[o]n a schedule established by the Department of Corrections."

On December 7, 2007, Ressy received an "Offender Accountability Plan" identifying Jack Kuczynski as his CCO. The plan required Ressy to "[o]bey and comply with instructions, conditions and rules of DOC" and to "[r]eport to and be available for contact with assigned community correction officer as directed." (Emphasis added.) It also stated that "[Probationer] will report to the Department of Corrections on every 2nd and 4th Tuesday of the month, or as other wise [sic] instructed to assigned CCO."

On Saturday, March 22, 2008, Antonia Thomas notified the King County Sheriff's Office that Ressy had contacted her in violation of the no-contact order. Thomas alleged in a written statement that on March 22, 2008, at 11:22 a.m.,

Ressy called and threatened to kill her.[1]  A detective's photograph of Thomas's caller display confirmed that Ressy called Thomas.

On March 25, 2008, Ressy reported to his assigned CCO, Jack Kuczynski, as required by his accountability plan.  He filed a grievance alleging that his daughter Destini left messages on his answering machine over the weekend of March 21, 2008, that he reported this contact to CCO Kuczynski by phone, and that Kuczynski was hostile and made fun of him.  The grievance stated, "My CCO threatened me with jail for any direct or indirect contact with my daughter who called me to inform me she was in danger, when he knew very clearly that my intentions were to get the help my daughter needed without making direct or indirect contact."

Later that day, Ressy filed a second grievance based on his interaction with CCO Kuczynski.  He alleged that when he asked to speak to a supervisor, Kuczynski "angrily said no," blocked Ressy's path, and asked him to leave the building.  Kuczynski's anger frightened Ressy, especially since he carried a gun. Ressy stated, "I never want to lay eyes on this person again" and indicated that he had "contacted a staff member, Mr. Steve [Burriss], to report an emergency situation to initiate an emergency grievance."

---

[1] In a certification for determination of probable cause, Detective Cynthia Sampson stated that Thomas heard Ressy say, "You've done it now bitch.  I have my daughter (DT) and if you come over to my house or try to do anything I'm going to kill you."

In a subsequent declaration, Ressy alleged that when he spoke to Burriss about Kucynski, Burriss responded angrily "with a flushed red face and stated 'you are going to get a lot of people's attention now.'"

On Thursday, March 27, 2008, CCO supervisor Carole Rigney responded to Ressy's second grievance by naming Steve Burriss as his new CCO. Burriss phoned Ressy on March 27, March 28, April 1, and April 2, 2008. He left messages asking Ressy to return the calls but received no answer.

On April 2, 2008, Burriss left a note at Ressy's residence. The note asked Ressy to contact Burriss to discuss the "transfer of your supervision to my caseload." That same day, Burriss learned that Ressy had allegedly contacted Antonia Thomas in violation of the no-contact order.

On April 3, 2008, Burriss left a second handwritten note at Ressy's residence. The note indicated Burriss was preparing a violation report that could result in a bench warrant. Burriss and his supervisor, Carole Rigney, then prepared a violation report in which Burriss swore that Ressy had failed to report as directed since March 25, 2008, contacted his victim in violation of the no-contact order, and failed to pay financial obligations since December 2007:

> The undersigned . . . called and left messages for Mr. Ressy on 3/27/08, 3/28/08 (twice), and on 4/1/08 requesting he contact this Officer and report to the Department of Corrections. The residence was also visited on 4/2/08 and a note was left for him to make contact with this Department immediately and explain why he was

not responding to the message. He has failed to respond to any of the messages.

That same day, Ressy finally called Burriss, stating that he had just received the messages Burriss left on his phone and door. Ressy agreed to meet Burriss the next day at 3:00 p.m.

On April 4, 2008, Burriss faxed the violation report to the prosecutor. Ressy did not show up for his meeting with Burriss, but Burriss received a voice mail from Ressy's attorney stating "if there were any violations of [Ressy's offender accountability plan], to summons [Mr. Ressy] to court."

On April 7, 2008, the court issued a bench warrant for Ressy's arrest.

On April 8, 2008, Ressy reported to the DOC office as required by his original reporting schedule. He checked in at an offender kiosk but did not contact Burriss.

On April 16, 2008, Ressy's counsel withdrew.

On April 17, 2008, Ressy appeared at his scheduled review hearing represented by a public defender. His counsel requested a continuance in order to prepare a defense to the alleged violations. The court granted a continuance to May 6, 2008, but ordered Ressy into custody under the outstanding bench warrant. The judge noted that the allegations underlying the bench warrant were "serious," and that she had presided over Ressy's trial and "made it very clear . . . what the conditions were." Ressy protested that he "didn't contact

anyone" and "didn't do anything wrong." The judge then said, "At this time, Mr. Ressy, I have to protect her." When Ressy asked what he did wrong, the court said, "You didn't report."

On May 6, 2008, Judge Cheryl Carey held a hearing on Ressy's alleged probation violations and a charge of violating a no-contact order. Burriss and Ressy testified. Ressy testified that he did not receive Burriss's messages or notes until April 3, 2008. He called Burriss and agreed to meet him the next day. He did not meet Burriss, however, because he had an anxiety attack and went to the hospital. The court admitted several exhibits, including a prescription Ressy received from a hospital doctor.

The court found that Ressy had willfully failed to report. After recounting Ressy's explanations for why he didn't receive Burriss's messages or notes and why he didn't meet with Burriss on April 8, the court stated,

> When I look at all of the explanations and justifications for every issue, he seems to have an explanation without any corroboration. I don't find that testimony credible.
> I do find the testimony of the DOC officer credible. . . . Therefore, I am going to find that as to failing to report, I will find that he has willfully failed to report.

The court sentenced Ressy to 90 days in jail. It also modified his original judgment and sentence to include a mental health evaluation and treatment because Ressy had been terminated by his domestic violence treatment provider for mental health reasons.

In June 2011, Ressy filed this civil action against DOC, CCO Burriss, and Burriss's supervisor, Carole Rigney, for retaliation and abuse of process, violation of his First Amendment rights, and intentional and negligent infliction of emotional distress. Each of these causes of action stemmed from Ressy's central allegation that the court jailed him on April 17, 2008, because of Burriss's false statement in his declaration that Ressy had not responded to his messages and notes.

On May 25, 2012, the superior court granted summary judgment dismissing Ressy's claims. The court's order states that "[t]he statements Mr. Burriss made in the Notice of Violation and in his court testimony were not false." The court also concluded there was no "cognizable injury because Defendant's actions were justified by former RCW 9.95.220." The court expressly declined to reach the defendants' arguments relating to immunity and collateral estoppel.

Ressy appeals.

### STANDARD OF REVIEW

The superior court dismissed Ressy's claims on summary judgment. We review a summary judgment order de novo, engaging in the same inquiry as the trial court and viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party.[2] Summary judgment is proper only if the

---

[2] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005).

pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] This court can sustain a summary judgment dismissal on any ground supported by the record.[4]

## ANALYSIS

For the reasons set forth below, the superior court did not err in dismissing Ressy's claims.

### Retaliation / First Amendment

Prisoners and supervised offenders have a First Amendment right to file grievances against corrections officials and to be free from retaliation for doing so.[5] To succeed on a claim of First Amendment retaliation under 42 U.S.C. § 1983, Ressy must prove (1) that a state actor took adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled his exercise of his or her First Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional goal.[6] Ressy "'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which

---

[3] CR 56(c); Hearst, 154 Wn.2d at 501.
[4] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).
[5] Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Wilson v. City of Fountain Valley, 372 F. Supp. 2d 1178, 1186 (C.D. Cal. 2004) (parolee); McCloud v. Kane, 491 F. Supp. 2d 312, 317-18 (E.D.N.Y. 2007) (parolee).
[6] Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Parmelee v. O'Neel, 145 Wn. App. 223, 247, 186 P.3d 1094 (2008).

- 8 -

he complains.'"[7] This element is proved "by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'"[8] If the plaintiff meets this burden, then the burden shifts to the defendants to show that the allegedly retaliatory action was narrowly tailored to serve a legitimate penological purpose.[9] This is equivalent to showing that the defendants "would have acted in the same manner even if the plaintiff had not engaged in protected conduct."[10]

Here, Ressy's amended complaint fails to allege that respondents' actions were not intended to advance a legitimate penological goal. And even if the complaint might be read as implicitly making that allegation, it nevertheless fails to state a viable claim for retaliation.

Ressy premises his retaliation claim on the assertion that some of Burriss's sworn statements in the notice of violation were false. Specifically, Ressy claims the statements alleging he failed "to report . . . as directed since 3/25/08" and "to respond to any of [Burriss's] messages" were false. He argued below that the failure "to report" allegation was false because he was only required to respond or report to his CCO and he had no knowledge that Burriss

---

[7] Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)).

[8] Watison, 668 F.3d at 1114-15 (citation omitted) (quoting Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984)).

[9] Wilson, 372 F. Supp. at 1187.

[10] Wilson, 372 F. Supp. at 1187.

had taken over as his CCO. Burriss, however, never alleged that Ressy failed to report to his CCO. Rather, he alleged that Ressy failed to report to the "Department of Corrections" as directed by Burriss's messages. This allegation was not false. And even if Burriss had alleged that Ressy failed to report as directed to his CCO, this allegation would not have been false since Burriss was in fact Ressy's CCO.[11]

Ressy argues alternatively that even if Burriss's allegations were not false when made, they became false when he called Burriss on April 3 and later appeared at a DOC office on his scheduled April 8, 2008, reporting date. Ressy contends Burriss should have amended his declaration to reflect these facts before sending it to the prosecutor on April 4 and attending the April 17 violation hearing. That omission, he concludes, supports his claim for retaliation. We disagree.

The gist of the challenged portion of Burriss's declaration was that Ressy failed to respond to multiple messages during a six-day period. The fact that Ressy eventually called Burriss after a week of unanswered messages does not render the gist of those statements false. Furthermore, updating the declaration

---

[11] Whether Ressy knew or should have known that Burriss was his CCO is irrelevant to the truth or falsity of these allegations. But even if it were relevant, the declaration was not false because Ressy had not yet responded to a note regarding his transfer to Burriss's CCO caseload when Burris signed the notice of violation.

would have allowed Burriss to add the undisputed fact that Ressy had agreed, but failed, to report to Burriss on April 4, 2008, and had not contacted Burriss on April 8 when he reported to a DOC office. Those facts would have bolstered the declaration, not undermined it.

We conclude that Burriss's alleged failure to update his declaration is not a sufficiently adverse act to support a claim of retaliation. Retaliatory conduct does not qualify as an "adverse act" unless it would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."[12] Retaliatory acts that do not meet this standard are "simply de minimis and therefore outside the ambit of constitutional protection."[13] As a matter of law, Burriss's failure to update his declaration was not conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.[14]

---

[12] Dawes v. Walker, 239 F.3d 489, 492-93 (2d Cir. 2001).

[13] Dawes, 239 F.3d at 492-93, overruled on other grounds by Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002) ("inconsequential actions" do not satisfy the "adverse action requirement").

[14] Given our conclusion, we need not reach the question of whether the record demonstrates, as a matter of law, that the defendants would have acted in the same manner even if Ressy had not filed the grievances. Wilson, 372 F. Supp. 2d at 1187; Cox v. Ashcroft, 603 F. Supp. 2d 1261, 1271 (E.D. Cal. 2009); Hartman v. Moore, 547 U.S. 250, 260, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006) ("[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."). We note, however, that the other allegations in the notice of violation, especially the serious allegation of a death threat and violation of a no-contact order, together with Burriss's duty to report perceived probation violations under RCW 9.95.220,

## *Abuse of Process*

To establish an abuse of process claim, the plaintiff must show (1) the existence of an ulterior purpose to accomplish an object not within the proper scope of process and (2) an act in the use of process not proper in the regular prosecution of the proceedings.[15] A malicious motive alone is not sufficient to establish abuse of process.[16] "'[T]he gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process . . . for an end other than that which it was designed to accomplish.'"[17] "[T]here must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit."[18]

Ressy alleged in his complaint that Burriss and Rigney "used and misused process through issuance of a Notice of Violation and supporting declarations . . . with an ulterior motive of retaliation." But these acts initiated the violation process. An abuse of process claim must be based on an act in the use of process that is not proper in the regular prosecution of the proceedings. Ressy has not identified such an act in this case. Burriss's alleged failure to update his

---

strongly support a conclusion that the defendants would have taken the same action regardless of Ressy's grievances.

[15] Fite v. Lee, 11 Wn. App. 21, 27, 521 P.2d 964 (1974).

[16] Fite, 11 Wn. App. at 27-28.

[17] Batten v. Abrams, 28 Wn. App. 737, 745, 626 P.2d 984 (1981) (emphasis omitted) (first alteration in original) (quoting WILLIAM L. PROSSER, TORTS § 121, at 856 (4th ed. 1971)).

[18] Batten, 28 Wn. App. at 748.

declaration in writing or at the April 17, 2008, hearing does not demonstrate such an act.[19] The court did not err in dismissing Ressy's claim for abuse of process.

*Intentional Infliction of Emotional Distress / Tort of Outrage*

Ressy's complaint next alleges the defendants "engaged in extreme and outrageous conduct by retaliating against Mr. Ressy in response to [his] grievance . . . and by misrepresenting facts in support of a proposed order to have Mr. Ressy remanded to jail thereby depriving him of his liberty and freedom." Ressy claims this conduct caused "severe emotional and psychological distress."

Assuming without deciding that defendants were not immune from suit,[20] this claim fails as a matter of law. To establish a claim for the tort of outrage, a plaintiff must demonstrate, among other things, that the conduct complained of was outrageous and extreme.[21] The defendant's conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible

---

[19] Cf. Hough v. Stockbridge, 152 Wn. App. 328, 344-47, 216 P.3d 1077 (2009) (use of numerous motions and discovery requests to harass opposing party was abuse of process).

[20] While we need not decide whether defendants enjoyed either quasi-judicial or qualified immunity for some or all of the causes of action alleged in the complaint, there is a basis for such immunity in some circumstances for parole or probation officers. See Taggart v. State, 118 Wn.2d 195, 213, 822 P.2d 243 (1992) (quasi-judicial immunity protects parole officer performing functions such as enforcing the conditions of parole or providing the Indeterminate Sentence Review Board with a report to assist the board in determining whether to grant parole); Reddy v. Karr, 102 Wn. App. 742, 748, 9 P.3d 927 (2000).

[21] Janaszak v. State, 173 Wn. App. 703, 726, 297 P.3d 723 (2013).

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[22] Ressy's allegations do not meet this standard as a matter of law.[23]

As noted above, Burriss's allegations were not false when made and were not rendered false by Ressy's subsequent contact with Burriss and DOC. And while updating the declaration and/or mentioning the new facts at the April 17 hearing would have informed the court of Ressy's telephone call to Burriss on April 3, 2008, and his reporting to the DOC kiosk on April 8, 2008, it would also have revealed his failure to report to Burriss on April 4 as agreed. The alleged outrageousness of Burriss's conduct must also be judged in light of the serious and undisputed allegations in his declaration that Ressy had also been terminated from domestic violence treatment and violated a no-contact order by contacting the domestic violence victim and threatening to kill her. The court properly dismissed this claim as well.

---

[22] Janaszak, 173 Wn. App. at 726 (internal quotation marks omitted) (quoting Reid v. Pierce County, 136 Wn.2d 195, 202, 961 P.2d 333 (1998)).

[23] Although the elements of outrage "are generally factual questions for the jury, a trial court faced with a summary judgment motion must first determine whether reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." Strong v. Terrell, 147 Wn. App. 376, 385, 195 P.3d 977 (2008).

## *Negligent Infliction of Emotional Distress*

In his claim for negligent infliction of emotional distress, Ressy alleges that Burriss knew or should have known that his misrepresentation of facts and failure to correct those facts would cause him severe emotional distress. Again, assuming without deciding that respondents do not enjoy immunity from this claim, the claim fails because, as discussed above, Burriss's representations were neither false when made nor rendered false by subsequent events.

Respondents request attorney's fees under RAP 18.1, which allows an award of fees when authorized by applicable law. RAP 18.1(b) requires citation to authority supporting an award of fees. Because respondents cite no such authority, we deny their request for fees.[24]

Affirmed.

*Leach, C.J.*

WE CONCUR:

*Cox, J.*                                *Becker, J.*

---

[24] State v. McNichols, 76 Wn. App. 283, 290, 884 P.2d 620 (1994) (where party requesting fees only cited RAP 18.1, court denied fees, stating, "[T]he rule authorizes an award only if applicable law grants him the right to recover fees. Mr. McNichols has not directed us to any applicable law."); Bay v. Jensen, 147 Wn. App. 641, 661, 196 P.3d 753 (2008) ("RAP 18.1(b) requires more than [a] bald request for attorney fees on appeal.").