**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:    Justices:
Clifford W. Taylor    Michael F. Cavanagh
   Elizabeth A. Weaver
   Marilyn Kelly
   Maura D. Corrigan
   Robert P. Young, Jr.
   Stephen J. Markman

FILED JULY 31, 2006

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                   No. 128368

MARK JOSEPH ANSTEY,

       Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

Defendant was arrested for operating a motor vehicle while under the influence of intoxicating liquor or with an unlawful blood alcohol level (OUIL/UBAL), a violation of MCL 257.625(1)(a) or (b). Following defendant's arrest, defendant agreed to take a police officer-administered chemical breath test of defendant's bodily alcohol level. Under MCL 257.625a(6)(d), after having agreed to take the police-administered test, defendant was entitled to "a reasonable opportunity to have a person of his or her own choosing administer" an independent chemical test. The prosecution does not dispute the district court's ruling that the statute was violated.

We granted leave to appeal in this case and directed the parties to include among the issues briefed: (1) whether dismissal is the proper remedy for the denial of an independent chemical test in violation of MCL 257.625a(6)(d); and (2) whether *People v Koval,* 371 Mich 453; 124 NW2d 274 (1963), was correctly decided. 474 Mich 886 (2005).

We conclude that because the statute does not specify a remedy, dismissal is not warranted for a statutory violation. In so holding, we specifically overrule *Koval, supra*, and its progeny. We hold, however, that when the trial court determines that the defendant was deprived of his or her right to a reasonable opportunity for an independent chemical test under MCL 257.625a(6)(d), the court may instruct the jury that the defendant's statutory right was violated and that the jury may decide what significance to attach to this fact. We also hold that defendant's due process right to present a defense was not violated.

## I. FACTS

Defendant was stopped by the police and arrested for OUIL/UBAL. The police transported defendant to jail and requested that he take a chemical breath test. Defendant agreed to take the test. It reflected that his body alcohol level was 0.21 grams per 210 liters of breath, plainly above the legal limit.[1] Defendant then

---

[1] At the time defendant was arrested, MCL 257.625(1) set the statutory intoxication threshold at a body alcohol content of 0.10 grams per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine. Pursuant to 2003 PA 61, however, the statutory intoxication threshold has been reduced from 0.10 to 0.08.

2

asked the arresting officer to transport him to a medical facility in Indiana for an independent chemical test, but the officer refused to do so. Defendant next asked the officer to transport him to Watervliet Community Hospital, about a 15- to 20-minute drive from the jail. The officer again refused, but offered to take defendant to Lakeland Hospital/St. Joseph Medical Center, a nearby location where the police routinely took suspects for chemical tests. Defendant refused this offer, apparently because he did not believe that he could obtain a truly independent test there. Consequently, defendant never received an independent test of his body alcohol level.

Defendant was charged with OUIL, second offense, and/or UBAL, second offense, MCL 257.625(1)(a) or (b); MCL 257.625(8)(b)[2]. Defendant moved to dismiss the charges because the arresting officer unreasonably denied his request for an independent chemical test under MCL 257.625a(6)(d). The district court found defendant's request to go to the Indiana hospital unreasonable because the officer would have had to travel outside his jurisdiction. But the district court found that defendant's request to go to Watervliet Hospital for an independent chemical test was reasonable, and that the officer violated MCL 257.625a(6)(d) by failing to honor defendant's request. The court determined that dismissal of the charges would be an "inappropriate and somewhat draconian" remedy because defendant was not completely denied his right to an independent chemical test,

---

[2] MCL 257.625(8)(b) has since been redesignated as MCL 257.625(9)(b).

3

because he was given the opportunity to obtain such a test at Lakeland Hospital. Instead, the court held that suppression of the results of the police-administered chemical test was the proper remedy.

The Berrien County Trial Court reversed, ruling that *Koval* and its progeny interpreting MCL 257.625a had consistently held that dismissal was the appropriate remedy for the unreasonable denial of an independent chemical test. The court held that the Legislature would have specifically provided for a different remedy or amended the statute to provide for a different remedy if it had not intended for the remedy to be dismissal. Instead, the Legislature had silently acquiesced to the remedy of dismissal by not amending the statute in light of *Koval* and subsequent Court of Appeals decisions holding that dismissal is the appropriate remedy. The trial court then remanded to the district court for entry of an order dismissing the charges.

The Court of Appeals affirmed. *People v Anstey*, unpublished opinion per curiam of the Court of Appeals, issued February 8, 2005 (Docket No. 255416). We granted the prosecution's application for leave to appeal. 474 Mich 886 (2005).

## II. STANDARD OF REVIEW

The prosecutor challenges whether dismissal of the charges against defendant was appropriate under MCL 257.625a(6)(d). Questions of statutory interpretation are questions of law that this Court reviews de novo. *People v Denio*, 454 Mich 691, 698; 564 NW2d 13 (1997).

4

### III.  ANALYSIS

#### A.  MCL 257.625a(6)(d)

The question before this Court is whether the Legislature intended that a violation of MCL 257.625a(6)(d) should result in dismissal of the case because the officer unreasonably denied defendant's request for an independent chemical test administered by a person of his own choosing.[3]  "The primary goal in construing a statute is 'to give effect to the intent of the Legislature.'  We begin by examining the plain language of the statute."  *People v Stewart*, 472 Mich 624, 631; 698 NW2d 340 (2002) (citations omitted).

The right to a reasonable opportunity to have an independent chemical test is created by statute, MCL 257.625a(6)(d):

> A chemical test described in this subsection shall be administered at the request of a peace officer having reasonable grounds to believe the person has committed a crime described in section 625c(1).  *A person who takes a chemical test administered at a peace officer's request as provided in this section shall be given a reasonable opportunity to have a person of his or her own choosing administer 1 of the chemical tests described in this subsection within a reasonable time after his or her detention.*  The test results are admissible and shall be considered with other admissible evidence in determining the defendant's innocence or guilt.  If the person charged is administered a chemical test by a person of his or her own choosing, the person charged is responsible for obtaining a chemical analysis of the test sample.  [Emphasis added.]

---

[3] We offer no opinion regarding whether the district court correctly ruled that the police violated MCL 257.625a(6)(d).  But because the prosecution does not challenge the district court's ruling, we assume for purposes of this section of the opinion that the statute was violated.

Notably, the Legislature did not specify what remedy to apply if a police officer failed to advise, or denied, a defendant of his or her right to a reasonable opportunity to obtain an independent chemical test.

By contrast, the Legislature has clearly specified that if a prosecutor fails to comply with subsection 8 of MCL 257.625a, the remedy available to a defendant for violation of subsection 8 of the statute is suppression of the results of the state-administered chemical test.[4] Had the Legislature intended a comparable remedy for a violation of subsection 6(d)—or even the more drastic remedy of dismissal—it could have so specified. *People v Monaco*, 474 Mich 48, 58; 710 NW2d 46 (2006) (citation omitted) ("'Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute . . . .'").

MCL 257.625a(7) is also noteworthy. At the time defendant was arrested, MCL 257.625a(7) provided, in pertinent part, as follows:[5]

---

[4] MCL 257.625a(8) provides:

If a chemical test described in subsection (6) is administered, the test results shall be made available to the person charged or the person's attorney upon written request to the prosecution, with a copy of the request filed with the court. The prosecution shall furnish the results at least 2 days before the day of the trial. The prosecution shall offer the test results as evidence in that trial. *Failure to fully comply with the request bars the admission of the results into evidence by the prosecution*. [Emphasis added.]

[5] *Koval* and its progeny did not address this subsection (or its then-existing equivalent) in determining that dismissal of charges was the appropriate remedy for an unreasonable denial of the right to an independent chemical test.

6

The provisions of subsection (6) relating to chemical testing do not limit the introduction of any other admissible evidence bearing upon the question of whether a person was impaired by, or under the influence of, intoxicating liquor . . . .[6]

Subsection 7 indicates that, notwithstanding the provisions regarding chemical testing evidence set forth in subsection 6, the Legislature intended to allow the prosecution to go forward on other evidence establishing impaired operation of a motor vehicle. Given this statutory language, a prosecutor could adduce evidence relating to a defendant's erratic driving, inability to perform field sobriety tests, or slurred speech, as well as other evidence tending to establish the defendant's impairment. Reading this subsection together with subsection 6, it would seem that the Legislature's intent, whether or not MCL 257.625a(6)(d) was violated, was to permit a prosecutor to go forward under MCL 257.625(1)(a) (OUIL) using other evidence, beyond chemical testing, to establish guilt. Dismissal, therefore, was not an anticipated remedy.[7]

---

[6] Subsection 7 was amended in 2003 to provide, in pertinent part: "The provisions of subsection (6) relating to chemical testing do not limit the introduction of any other admissible evidence bearing upon any of the following questions: . . ." 2003 PA 61. Our analysis applies equally to the amended statute.

[7] Justice Cavanagh argues (and the trial court held) that the Legislature's decision not to add a remedy to MCL 257.625a(6)(d) in post-*Koval* amendments to the statute indicates the Legislature's agreement with the *Koval* Court's interpretation of the statute. Justice Cavanagh, however, ignores our holding in *Neal v Wilkes*, 470 Mich 661, 668 n 11; 685 NW2d 648 (2004):

> [A]s we recently explained in *People v Hawkins*, 468 Mich 488, 507-510; 668 NW2d 602 (2003), neither "legislative acquiescence" nor the "reenactment doctrine" may "be utilized to subordinate the plain language of a statute." "Legislative
> (continued…)

acquiescence" has been repeatedly rejected by this Court because "Michigan courts [must] determine the Legislature's intent from its *words*, not from its silence." *Donajkowski v Alpena Power Co,* 460 Mich 243, 261; 596 NW2d 574 (1999). Although, where statutory language is ambiguous, the reenactment doctrine may be a more useful tool of construction, "in the absence of a clear indication that the Legislature intended to either adopt or repudiate this Court's prior construction, there is no reason to subordinate our primary principle of construction—to ascertain the Legislature's intent by first examining the statute's language—to the reenactment rule." *Id.* at 508-509. [Emphasis in original.]

Because MCL 257.625a(6)(d) omits a remedy for a violation of the right to a reasonable opportunity for an independent chemical test, the reenactment doctrine is inapplicable. Contrary to Justice Cavanagh's argument, we do not hold that the Legislature left ambiguous the remedy for a violation of the statute. Because the Legislature did not provide a remedy in the statute, we may not create a remedy that only the Legislature has the power to create. Our holding that the judiciary has the inherent authority to instruct the jury regarding a violation of the statute does not create such a remedy.

Further, the amendments to MCL 257.625a(6)(d) do not clearly demonstrate through words the Legislature's intention to adopt or repudiate *Koval*'s interpretation of the statute. Justice Cavanagh erroneously focuses on the Legislature's *silence* rather than its *words*. We interpret the statute by examining its plain language and by employing *applicable* rules of statutory construction. In arguing that dismissal is the appropriate remedy for a violation of MCL 257.625a(6)(d), Justice Cavanagh disregards the text of the statute and the rule of statutory construction that courts cannot assume that the Legislature inadvertently omitted language from one portion of the statute that it placed in another portion of the statute. *Monaco, supra* at 58. It is Justice Cavanagh, not the majority, that "chooses to disregard rules of statutory construction . . . ." *Post* at 7.

Further, we reject Justice Cavanagh's contention that our holding fails to give meaning to the word "shall" in the statute. While Justice Cavanagh correctly argues that the word "shall" indicates that the right to a reasonable opportunity for an independent chemical test is mandatory, this is not the issue before us. Rather, the issue is what *consequences* the Legislature intended when this mandatory right is violated.

8

Notwithstanding the absence of statutory language mandating dismissal for a violation of MCL 257.625a(6)(d), the trial court and the Court of Appeals held that dismissal of the charges against defendant was required because of this Court's ruling in *Koval, supra*. This Court interpreted a previous version of MCL 257.625a(6)(d) in *Koval, supra*. In that case, the defendant was stopped for driving while intoxicated. *Koval, supra* at 456-457. The police officers failed to advise the defendant of his right to have an independent chemical test, contrary to defendant's statutory right.[8] The previous version of the statute, like the present version, did not provide a remedy. This Court held that noncompliance with the mandatory statutory requirement required dismissal of the charges against the defendant. *Id.* at 459. In reaching this conclusion, this Court cited the mandatory form of the statute and noted that the statute "was enacted for the protection and

---

[8] At the time, the pertinent language of the statute provided as follows:

"(3) A person charged with driving a vehicle while under the influence of intoxicating liquor shall be permitted to have a licensed physician or registered nurse, under the supervision of a physician of his own choosing, administer a chemical test as provided in this section within a reasonable time after his detention, and the results of such test shall be admissible if offered by the defendant and shall be considered with other competent evidence in determining the innocence or guilt of the defendant. Any person charged with driving a vehicle while under the influence of intoxicating liquor shall have the right to demand that the test provided for in this section must be given him, provided facilities are reasonably available to administer such test, and the results of such test shall be admissible if offered by the defendant and shall be considered with other competent evidence in determining the innocence or guilt of

(continued…)

9

benefit of a defendant charged with operating a motor vehicle while under the influence of intoxicating liquor." *Id.* at 458.[9]

As discussed, the text of the statute makes clear that the Legislature did not intend the remedy of dismissal to follow from a violation of the right to a reasonable opportunity for an independent chemical test. Additionally, our case law supports the conclusion that neither dismissal nor suppression of the evidence is an appropriate remedy for a violation of MCL 257.625a(6)(d). In *People v Hawkins*, 468 Mich 488, 512-513; 668 NW2d 602 (2003), this Court held that the exclusionary rule is "a harsh remedy designed to sanction and deter police misconduct where it has resulted in a violation of *constitutional* rights . . . ." (Emphasis partially deleted.) This appeal also involves violation of a statutory right, not a constitutional right.[10] This Court "reaffirm[ed] that where there is no

---

(…continued)
> the defendant. The defendant shall be advised of his right to the test provided for in this subsection." [*Koval, supra* at 455-456.]

[9] Several Court of Appeals opinions decided after *Koval* have held or recognized that dismissal is the appropriate remedy for a violation of the right to a reasonable opportunity for an independent chemical test. See, e.g., *People v Green*, 260 Mich App 392, 407; 677 NW2d 363 (2004), *People v Prelesnik*, 219 Mich App 173, 181; 555 NW2d 505 (1996), overruled on other grounds in *People v Wager*, 460 Mich 118, 123-124; 594 NW2d 487 (1999), *People v Hurn*, 205 Mich App 618, 620; 518 NW2d 502 (1994), *People v Dicks*, 190 Mich App 694, 701; 476 NW2d 500 (1991), *People v Willis*, 180 Mich App 31, 37; 446 NW2d 562 (1989), *People v Underwood*, 153 Mich App 598, 600; 396 NW2d 443 (1986), and *People v Burton*, 13 Mich App 203, 207; 163 NW2d 823 (1968). We overrule these cases, along with *Koval*.

[10] See our discussion of the due process issue later in this opinion.

determination that a statutory violation constitutes an error of constitutional dimensions, application of the exclusionary rule is inappropriate unless the plain language of the statute indicates a legislative intent that the rule be applied." *Id.* at 507. Where there is nothing in the statutory language indicating that the exclusionary rule applies to a violation of a statute, this Court should decline to infer such legislative intent, because "[t]o do otherwise would be an exercise of *will* rather than *judgment*." *People v Stevens (After Remand)*, 460 Mich 626, 645; 597 NW2d 53 (1999) (emphasis in original). This Court has repeatedly applied these principles in holding that suppression of the evidence is not an appropriate remedy for a statutory violation where there is no indication in the statute that the Legislature intended such a remedy and no constitutional rights were violated. See, e.g., *Hawkins, supra*; *People v Hamilton*, 465 Mich 526; 638 NW2d 92 (2002), overruled in part on other grounds in *Bright v Ailshie*, 465 Mich 770, 775 n 5; 641 NW2d 587 (2002); *People v Sobczak-Obetts*, 463 Mich 687; 625 NW2d 764 (2001)[11]; and *Stevens, supra*. Applying similar reasoning, we hold that dismissal, which is an even more drastic remedy, is not an appropriate remedy for a statutory violation unless the statute clearly provides otherwise. The language of

---

[11] We are puzzled by Justice Cavanagh's decision to single out our "analysis" of *Sobczak-Obetts, supra*, and distinguish it on its facts. We list *Sobczak-Obetts, supra*, only as an example of a case in which this Court held that suppression of the evidence is not an appropriate remedy for a statutory violation where there is no indication in the statute that the Legislature intended such a remedy and no constitutional rights were violated. We do not hold that the statutes in *Sobczak-Obetts, supra*, are similar to MCL 257.625a(6)(d).

MCL 257.625a does not reveal that the Legislature intended to impose the drastic remedy of dismissal or suppression of the evidence when an officer fails to give a defendant a reasonable opportunity for an independent chemical test. Accordingly, neither of these remedies is appropriate for a violation of MCL 257.625a(6).[12] We overrule *Koval*'s holding to the contrary.[13]

But while the text of MCL 257.625a shows that the Legislature did not intend that dismissal or suppression of the evidence follow from a violation of subsection 6(d), the language of the statute does not render this Court powerless to act in the face of a police agency's violation of a defendant's statutory right to obtain potentially exculpatory evidence under MCL 257.625a(6)(d). Through

---

[12] Further, neither dismissal nor suppression of the results of the police-administered chemical test is appropriate because these remedies would put the prosecution in a worse position than if the police officer's improper conduct had not occurred. *Stevens, supra* at 640-641. Moreover, the exclusionary rule is inappropriate because the rule "forbids the use of direct and indirect evidence *acquired from governmental misconduct*," and there is no causal relationship between the officer's failure to provide defendant with a reasonable opportunity for an independent chemical test and the police-administered chemical test. *Sobczak-Obetts, supra* at 710 (emphasis in original and citations omitted); see also *Hudson v Michigan*, ___ US ___, ___ ; 126 S Ct 2159, ___; 165 L Ed 2d 56, 64-65 (2006). Finally, suppression is not an appropriate remedy for a violation of the statute, because the loss of evidence should not be remedied by preventing the jury from considering more relevant evidence. Rather than promoting the truth-seeking function at trial, suppression of the evidence exacts a ""costly toll" upon truth-seeking and law enforcement objectives . . . .'" *Id.* ___ US ___; 126 S Ct ___; 165 L Ed 2d 65, quoting *Pennsylvania Bd of Probation & Parole v Scott*, 524 US 357, 364; 118 S Ct 2014; 141 L Ed 2d 344 (1998).

[13] We do not, as Justice Cavanagh contends, "simply close the books and end the inquiry" at this point. *Post* at 4. Rather, the remainder of our opinion is

(continued…)

12

MCL 257.625a(6)(d), the Legislature conferred on defendants a statutory right to develop potentially exculpatory evidence to refute the results of a police-administered chemical test. Thus, when a police officer denies a defendant his or her statutory right to a reasonable opportunity for an independent chemical test administered by a person of his or her own choosing, the officer prevents the defendant from exercising a statutory right to discover potentially favorable evidence in his or her defense.

The jury should be permitted to weigh the police officer's wrongful conduct as well as the statutory right that the officer denied. When the defendant argues before trial that he was deprived of a reasonable opportunity for an independent chemical test, the trial court must determine, after an evidentiary hearing if necessary, whether the defendant was in fact deprived of this statutory right. If the court determines that a statutory violation occurred, then it is free, upon request of defense counsel, to inform the jury of this violation and instruct the jury that it may determine what weight to give to this fact. Such a jury instruction is an appropriate consequence for the violation of a mandatory statutory right to a reasonable opportunity for an independent chemical test because it will accord meaning to the right created in subsection 6(d) without creating a remedy that the Legislature did not intend. A jury instruction will also

_____

(…continued)
dedicated to determining what course of action a trial court may take when a statutory violation occurs.

presumably deter police officers from violating that right in the future. We offer

the following possible instruction for violations of MCL 257.625a(6)(d):

> Our law provides that a person who takes a chemical test administered at a peace officer's request must be given a reasonable opportunity to have a person of his or her own choosing administer an independent chemical test. The defendant was denied such a reasonable opportunity for an independent chemical test. You may determine what significance to attach to this fact in deciding the case. For example, you might consider the denial of the defendant's right to a reasonable opportunity for an independent chemical test in deciding whether, in light of the nonchemical test evidence, such an independent chemical test might have produced results different from the police-administered chemical test.[14]

The court's authority to give such an instruction derives from the inherent

powers of the judiciary. Const 1963, art 6, § 5, entrusts this Court with the

authority and duty to prescribe general rules governing the practice and procedure

in all courts in the state.[15] See *People v Glass (After Remand)*, 464 Mich 266, 281;

627 NW2d 261 (2001). "'It is also well settled that under our form of government

the Constitution confers on the judicial department all the authority necessary to

exercise its powers as a coordinate branch of government.'" *Maldonado v Ford

Motor Co*, 476 Mich ___, ___; ___ NW2d ___ (Docket No. 126274, decided July

31, 2006), slip op at 18, quoting *In re 1976 PA 267*, 400 Mich 660, 662-663; 255

NW2d 635 (1977). The judicial powers derived from the constitution may not be

---

[14] This proposed instruction incorporates language from MCL 257.625a(6)(d).

[15] "The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." Const 1963, art 6, § 5.

14

diminished, exercised, or interfered with by other branches of the government. *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 162; 665 NW2d 452 (2003).  Exercising this authority, our Court has enacted court rules that require the trial court to instruct the jury on the applicable law and give the court the discretion to comment on the evidence:

> Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party requests as provided in subrule (A)(2), that party's theory of the case.  The court, at its discretion, may also comment on the evidence, the testimony, and the character of the witnesses as the interests of justice require.  [MCR 2.516(B)(3).][16]

Additionally, the Legislature has directed the judiciary to instruct the jury on the law and permitted a court to comment on the evidence:

> It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.  The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require.  [MCL 768.29.]

---

[16] The rules of criminal procedure also require the trial court to instruct the jury on the applicable law:

> After closing arguments are made or waived, the court must instruct the jury as required and appropriate, but at the discretion of the court, and on notice to the parties, the court may instruct the jury before the parties make closing arguments, and give any appropriate further instructions after argument.  After jury deliberations begin, the court may give additional instructions that are appropriate. [MCR 6.414(H).]

Thus, the judiciary has the authority and obligation under both court rule and statute to instruct the jury on the applicable law and the discretionary power to comment on the evidence as justice requires. The Legislature has not stripped the judiciary of these powers in this context.[17]

It is also well-established in our case law that the trial court must instruct the jury on the law applicable to the facts of the case:

> "[I]t is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he should state to them fully the law applicable to the facts. Especially is this his duty in a criminal case." [*People v Henry*, 395 Mich 367, 373-374; 236 NW2d 489 (1975), quoting *People v Murray*, 72 Mich 10, 16; 40 NW 29 (1888).]

The trial court must instruct the jury not only on all the elements of the charged offense, but also, upon request, on material issues, defenses, and theories that are supported by the evidence. *People v Rodriguez*, 463 Mich 466, 472-473; 620 NW2d 13 (2000); *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975).

The trial court's authority to comment on the evidence encompasses the power to summarize the evidence relating to the issues, call the jury's attention to particular facts, *People v Lintz*, 244 Mich 603, 617; 222 NW 201 (1928), and "point out the important testimony so as to lead the jury to an understanding of its

---

[17] In some situations, the Legislature has forbidden a trial court from instructing a jury with regard to certain matters. For example, a trial court may not instruct on the limits on noneconomic damages in product liability and medical malpractice actions. MCL 600.2946a(2) and MCL 600.6304(5). The Legislature

(continued…)

16

bearings," *Richards v Fuller*, 38 Mich 653, 657 (1878). The trial court's comments must be fair and impartial, *Burpee v Lane*, 274 Mich 625, 627; 265 NW 484 (1936), and the court should not make known to the jury its own views regarding disputed factual issues, *People v Young*, 364 Mich 554, 558; 111 NW2d 870 (1961), the credibility of witnesses, *People v Clark*, 340 Mich 411, 420-421; 65 NW2d 717 (1954), or the ultimate question to be submitted to the jury, *Lintz, supra* at 617-618.[18]

The instruction we offer falls within the court's inherent authority to instruct the jury on the law applicable to the case and the discretionary power to

---

(…continued)
has not restricted the trial court's authority to give jury instructions in the context of a violation of MCL 257.625a(6)(d).

[18] In *People v Ward*, 381 Mich 624, 628-629; 166 NW2d 451 (1969), this Court explained that the court's authority to instruct the jury and comment on the evidence must be discharged separately:

> The trial judge's twofold authority to instruct the jury on the law and to make such comment upon the evidence, the testimony, and the witnesses as, in his opinion, the interest of justice may require is severable and must be discharged separately. When a trial judge instructs upon the law he must do so affirmatively. So far as the jury is concerned, the law is what the judge says it is. They have the duty to follow his instructions on the law.

> As to the court's comment upon the evidence, such comments are not binding upon the jury. They do not delineate the jury's duty and they must be prefaced by words which leave the jury free to disregard them in good conscience.

comment on the evidence.[19] A defendant who is denied the statutory right to a reasonable opportunity for an independent chemical test administered by a person of his or her own choosing may advance the defense that the police-administered test was inaccurate,[20] and that the police deprived him or her of the opportunity to

---

[19] We do not, as Justice Weaver states, "rewrite the statute from the bench." *Post* at 4. Our holding that the court has the authority to instruct the jury that the statute was violated does not usurp the Legislature's authority by supplying a remedy that does not exist in the statute. Rather, our holding is based on the inherent power of the judiciary to instruct on the law and comment on the evidence.

[20] Justice Cavanagh is incorrect that "the defendant is left with *absolutely no meaningful way to refute the prosecutor's chemical evidence against him in a criminal trial*." *Post* at 10 (emphasis in original). An independent chemical test is not the only way a defendant may challenge the accuracy of the police-administered test. See *California v Trombetta*, 467 US 479, 490; 104 S Ct 2528; 81 L Ed 2d 413 (1984) (listing alternative ways in which the defendant could challenge the results of the Intoxilyzer test). For example, a defendant may introduce evidence that the machine used to administer the chemical test (in this case a breathalyzer) was improperly calibrated or maintained. A defendant may also adduce nonchemical evidence, such as the testimony of a toxicology expert, who can give an expert opinion on the defendant's body alcohol level based on the number of drinks the defendant consumed over a course of time. Despite the concerns raised in the article cited by the dissent, the Hawaii Supreme Court has more recently opined that the "Widmark formula," which estimates an individual's body alcohol level based on weight and gender, the type and amount of alcohol, the absorption rate and the elimination rate, is "widely viewed as reliable." *State v Vliet*, 95 Hawaii 94, 112; 19 P3d 42 (2001). Further, the extrapolation of a "range" within which a defendant's body alcohol level falls could be very helpful, if believed by the jury, by raising a reasonable doubt that the defendant was operating a motor vehicle with an unlawful blood alcohol level. See, e.g., *State v Preece,* 971 P2d 1, 7-8 (Utah App, 1998) (holding that the trial court committed error requiring reversal by not permitting the defendant to introduce evidence that, under the "Widmark formula," his body-alcohol level could have been below the legal limit at the time he was stopped by the police).

Moreover, a defendant can challenge the accuracy of the police-administered chemical test itself, as well as the method by which it was operated

(continued…)

18

raise a reasonable doubt of guilt through an independent test. The trial court may instruct and inform the jury on the requirements of MCL 257.625a(6)(d) and properly comment on the evidence by bringing to the jury's attention that the defendant's statutory right has been violated. Such an impartial instruction will communicate no opinion and compel no outcome, but will only inform the jury of the law and the facts and allow the jury to draw its own conclusions. Thus, it will not encroach upon the exclusive province of the jury to weigh the testimony and draw inferences therefrom. *People v Larco*, 331 Mich 420, 430; 49 NW2d 358 (1951); *People v Dupree*, 175 Mich 632, 639; 141 NW 672 (1913).

Such an instruction will also advance the judiciary's duty to assist the jury in ascertaining the truth. The late Joseph D. Grano once stated that "the goal of discovering the truth should play a dominant role in designing the rules that govern criminal procedure." Grano, *Confessions, Truth, and the Law* (Ann Arbor, The University of Michigan Press, 1993), p 6; see also Grano, *Implementing the objectives of procedural reform: The proposed Michigan Rules of Criminal Procedure—Part I*, 32 Wayne L R 1007, 1011, 1018 (1986); and Grano, *Special issue: Introduction—The changed and changing world of constitutional criminal*

---

(…continued)
when the police obtained his or her breath sample. Thus, contrary to the dissent's assertion, the results of a police-administered chemical test are not "indisputable." See, e.g., *Trombetta, supra* at 490 (noting that the results of an Intoxilyzer test can be challenged in a variety of ways, including "faulty calibration, extraneous interference with machine measurements, and operator error").

19

*procedure: The contribution of the Department of Justice's Office of Legal Policy*, 22 U Mich J L Reform 395, 402-404 (1989). In analyzing the underlying purposes and objectives of procedural reform, Grano stated:

> [T]he primary objective of criminal procedure is to facilitate the ascertainment of truth. To some extent, therefore, fairness must encompass this concern. Accordingly, rules are unfair when they do not provide either party an adequate opportunity to develop and present his case. The special concern with fairness for the defendant, however, stems from the special abhorrence of erroneous conviction. Thus, basic agreement exists that a rule is unfair if it denies the defendant an adequate opportunity to defend against the charges. [Grano, *Implementing the objectives of procedural reform: The proposed Michigan Rules of Criminal Procedure—Part I*, 32 Wayne L R 1007, 1018 (1986).]

Promoting the truth-seeking process is one of the judiciary's primary goals in determining the appropriate action to take when one party prevents the other from obtaining evidence. Justice Markman has explained that "[t]he discovery of the truth is essential to the successful operation of the system's mechanisms for controlling crime and mitigating its consequences." Markman, *Special issue: Foreward: The "truth in criminal justice" series*, 22 U Mich J L Reform 425, 428 (1989).[21]

---

[21] We reject Justice Cavanagh's argument that dismissal of the charges better serves the truth-seeking process than allowing the jury to consider the violation of the defendant's statutory right to a reasonable opportunity for an independent chemical test. Dismissal does not merely prevent the jury from considering relevant evidence (as suppression of the evidence would), but it prevents the jury from considering the charges altogether. Such a remedy ensures that the truth will *never be discovered*. Conversely, a jury instruction that the statute was violated gives the jury all of the available relevant information. The instruction gives the defendant an adequate opportunity to defend himself by

(continued…)

By placing all the facts before the fact-finder, the instant instruction will further the pursuit of the truth and give real effect to the right in MCL 257.625a(6)(d). This instruction will promote a basic premise of our justice system, that providing more, rather than less, information will generally assist the jury in discovering the truth. It will communicate an accurate account of what transpired and allow the jurors to apply the law to the facts as they decide. Where evidence or a witness is unavailable or compromised because of the conduct of prosecutors and police officers, the court should not keep *more* evidence away from the jurors, but should rather give the jurors *all* the pertinent information, including what has been denied to them, and allow them to assess the consequences.[22]

---

(…continued)
arguing that the police-administered test was inaccurate and that an independent test would have produced a different result.

[22] Additionally, MCL 257.625a(6)(d) places a procedural obligation on the police to enable a defendant to obtain relevant evidence. Police agencies will be deterred from breaching this obligation if they understand that jurors may consider the statutory violation at trial. An instruction will not only give concrete effect to a defendant's statutory right to secure an independent chemical test, but it will deter future arbitrary use of police power by limiting the extent to which the state benefits from its own wrongdoing. But unlike the harsh remedies of suppression or dismissal, a jury instruction will not seek to "punish" police agencies, but will rather give the jury relevant information that they may consider when rendering their verdict.

We reject Justice Cavanagh's statements that the instruction "encourages" the police to violate MCL 257.625a(6)(d) and "reward[s]" the police for violating the statute. *Post* at 14, 15 n 6. Contrary to Justice Cavanagh's argument, an instruction is a meaningful consequence, because it makes the jury aware that the

(continued…)

Prohibiting the trial court from instructing the jury regarding a violation of MCL 257.625a(6)(d) would keep relevant information from the jury by concealing the denial of the defendant's statutory right to develop potentially exculpatory evidence. Not only would this impede the jury's search for the truth, but it would permit police officers to ignore a defendant's mandatory statutory right to a reasonable opportunity for an independent chemical test administered by a person of his own choosing without consequence. Thus, in light of our general power to instruct and comment on the evidence in criminal cases, and the trial's goal of promoting the search for truth, we conclude that in these narrow circumstances, the courts may give a jury instruction informing the jury that MCL 257.625a(6)(d) was violated.

_____

(…continued)
police acted inappropriately by violating the statute. Making the jury aware that the police violated the law in no way "encourages" or "rewards" the police.

Further, Justice Cavanagh argues that a violation of the statutory right to an independent chemical test puts the police "in a *superior* position because they will hold the trump card of indisputable chemical evidence." *Post* at 15 n 6 (emphasis in original). That argument contains two flaws. First, Justice Cavanagh wrongly assumes that the results of the independent chemical test would have been favorable to the defendant. Even if the results of the independent chemical test would have been favorable to the prosecution, the instruction allows the jury to make what they will of the statutory violation, including finding that the independent chemical test would have been favorable to the defendant. Second, the police-administered chemical test is not "undisputable" chemical evidence. Defendant has many effective ways to challenge this evidence. See n 20 of this opinion.

While we hold that the trial court may give a jury instruction where there is a violation of MCL 257.625a(6)(d), an instruction is not necessarily appropriate for a violation of every statutory right where the statute does not provide a remedy. It is appropriate in this case because it gives meaning to the statutory right to a reasonable opportunity for an independent chemical test administered by a person of his or her own choosing and is consistent with the judicial power to instruct on the law and comment on the evidence in the interests of justice. We limit application of the instruction to the statute at issue.

## B. Due Process

Defendant argues that the violation of MCL 257.625a(6)(d) also violated his due process right to present a defense. Because the parties dispute whether a constitutional violation occurred and Justice Cavanagh argues that defendant's due process rights were violated, we address the constitutional issue despite the lower courts' decisions not to base their rulings on any constitutional violation.[23] But we address only the constitutional issue and offer no opinion on the

---

[23] The district court held that defendant's request to go to Watervliet Hospital was reasonable, so the officer violated the statute in denying defendant's request. The trial court, while stating that "a due process constitutional issue is implicated . . . since it relates to perishable evidence," ultimately held that "[a] constitutional analysis is not required, since the statutory remedy [dismissal] is clear." Unpublished opinion of the Berrien County Trial Court, issued April 20, 2004 (Docket No. 2003-411091-SD), slip op at 8, 9. The Court of Appeals also did not address any constitutional issues, holding instead that dismissal was warranted because of the officer's violation of the statute.

23

correctness of the district court's ruling that the officer violated the statute, because that is not at issue in this case.

A criminal defendant has a right to present a defense under our state and federal constitutions. US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 17, 20; *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984). "[T]he right to present a defense is a fundamental element of due process . . . ." *Id.* at 279. In *Pennsylvania v Ritchie*, 480 US 39, 56; 107 S Ct 989; 94 L Ed 2d 40 (1987), the United States Supreme Court stated, "Our cases establish, at a minimum, that criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt."

> Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867[ 102 S Ct 3440; 73 L Ed 2d 1193] (1982). Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system. [*California v Trombetta*, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984).]

Defendant argues that his due process right to obtain potentially exculpatory evidence was violated under *Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988), because the officer acted in bad faith in denying defendant's request to be taken to Watervliet Hospital for an independent chemical test. We disagree. In *Youngblood, supra* at 57-58, the United States

Supreme Court held that the government's failure to preserve potentially exculpatory evidence violates a criminal defendant's due process rights if the defendant can show bad faith on the part of the government. *Youngblood* is distinguishable because it involves the government's failure to disclose *existing* evidence in its possession, where the instant case involves defendant's right to *develop* potentially exculpatory evidence not in the government's possession.[24] For due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance. *People v Stephens*, 58 Mich App 701, 705; 228 NW2d 527 (1975). Defendant has cited no cases holding that *Youngblood* and its progeny apply when the government fails to turn over evidence that has yet to be developed. Because the instant case involves the failure to develop evidence, as opposed to the failure to disclose existing evidence, the bad-faith test in *Youngblood* is inapplicable.

Defendant's right to present a defense was not violated because the police have no constitutional duty to assist a defendant in developing potentially

---

[24] Justice Cavanagh argues that the defendant does not develop evidence when he or she takes an independent chemical test, apparently because the defendant's blood and the alcohol in the defendant's blood already exist. The evidence defendant sought, however, was not his own blood, but the *results of a test* measuring the alcohol content in his blood at the time he was arrested. Justice Cavanagh fails to see that these results simply do not exist, because the test was never administered.

exculpatory evidence. Just as the police have no constitutional duty[25] to perform any chemical tests, *Youngblood, supra* at 59,[26] they have no constitutional duty to assist the defendant in obtaining an independent chemical test.[27] See, e.g., *In re Martin*, 58 Cal 2d 509, 512; 374 P2d 801; 24 Cal Rptr 833 (1962) (in holding that the police are not required to assist a defendant in obtaining a chemical test, the California Supreme Court explained that "police officers are not required to take the initiative or even to assist in procuring evidence on behalf of a defendant which is deemed necessary to his defense"); and *People v Finnegan*, 85 NY2d

___

[25] Justice Cavanagh quibbles with our use of the phrase "constitutional duty." Though we did not think any explanation of this wording would be needed, we clarify for Justice Cavanagh that by "constitutional duty," we mean that the police have a duty to honor the defendant's constitutional rights. We see nothing misleading about the phrase "constitutional duty," which the United States Supreme Court has used in this context. See, e.g. *Youngblood, supra* at 59 ("the police do not have a constitutional duty to perform any particular tests"); *Hoffa v United States*, 385 US 293, 310; 87 S Ct 408; 17 L Ed 2d 374 (1966) ("Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation . . . .").

[26] In *Youngblood, supra* at 59, the United States Supreme Court stated that "the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests."

[27] In attempting to distinguish the *Finnegan* case, Justice Cavanagh states that the plain language of MCL 257.625a(6)(d) creates an affirmative statutory duty on behalf of the police to assist a defendant in obtaining an independent chemical test. Justice Cavanagh relies on the language in the statute indicating that a defendant "*shall be given a reasonable opportunity*" to have a person of the defendant's choosing administer the independent chemical test. The issue here, however, is whether the constitution requires that a defendant have a reasonable opportunity to obtain an independent chemical test. Because the parties have conceded that the statute had been violated, we need not address whether the

(continued…)

26

53, 58; 647 NE2d 758; 623 NYS2d 546 (1995) ("law enforcement personnel are not required to arrange for an independent test or to transport defendant to a place or person where the test may be performed" because "police have no affirmative duty to gather or help gather evidence for an accused").  Thus, the police have no constitutional duty to take affirmative action to transport the defendant from the place of his or her incarceration to a hospital of his or her choice for the requested test.  *State v Choate*, 667 SW2d 111, 113 (Tenn Crim App, 1983) (where the defendant argued that he had a constitutional right to police assistance in obtaining an independent chemical test whether or not he complied with the statute requiring him to take a police-administered test, the court held that the police have no "affirmative [constitutional] duty to make a blood test available to the defendant by transporting him from the place of his incarceration to a hospital for the requested test").  Thus, the officer's actions in the instant case did not violate defendant's due process rights because the officer had no constitutional duty to assist defendant in obtaining an independent chemical test by transporting defendant to Watervliet Hospital.[28]

---

(…continued)
statute creates an affirmative duty on behalf of the police to assist a defendant in obtaining such a test.

[28] Further, although not necessary for our analysis, the officer not only gave defendant an opportunity for a second chemical test at Lakeland Hospital, he offered to transport defendant to the hospital.  Defendant chose not to avail himself of the opportunity for transportation to Lakeland Hospital for a second chemical test independent of the police-administered test.

## IV. CONCLUSION

The statutory text does not reflect that the Legislature intended either dismissal or suppression of the evidence to be the remedy for a violation of MCL 257.625a(6)(d). Accordingly, we overrule *Koval* and its progeny. Instead, we hold that a permissive jury instruction may be appropriate when the trial court has determined that there was a violation of MCL 257.625a(6)(d). When the Legislature established the right of a defendant to seek an independent chemical test, it intended to allow that defendant to use the test to rebut evidence produced by the prosecutor at trial. A jury instruction will give meaning to that right by placing all relevant information, including the requirements of the statute, before the fact-finder. Such an instruction in this circumstance is an appropriate function of the judicial power that will ensure the integrity of the criminal trial and further the pursuit of the truth. We also hold that defendant's due process right to present a defense was not violated.

We reverse the judgment of the Court of Appeals and remand the matter to the trial court for reinstatement of the charges against defendant. At trial, the results of the police-administered chemical test shall be admissible, but the trial court may instruct the jury that the police violated defendant's statutory right to a reasonable opportunity for an independent chemical test.

Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

28

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                No.  128368

MARK JOSEPH ANSTEY,

        Defendant-Appellee.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

Defendant herein was arrested for operating a vehicle while intoxicated, a violation of MCL 257.625.  At the arresting officer's request, defendant agreed to take a chemical breath test.   The prosecutor has conceded that defendant was denied a reasonable opportunity to have a second, independent chemical test by a person of his choosing.

Pursuant to this Court's decision in *People v Koval*,[1] the Court of Appeals affirmed the trial court's dismissal of charges against defendant on the basis that he had been denied his reasonable request for an independent test.

I concur with the result of the majority's opinion overruling *Koval* and its progeny, reversing the Court of Appeals judgment, and remanding to the trial court to reinstate charges against defendant.

_____

[1] 371 Mich 453; 124 NW 2d 274 (1963).

However, I dissent and decline to join that portion of the majority's opinion creating a remedy that when a defendant is unreasonably denied the opportunity for an independent test, the trial court may instruct the jury to that effect. Rather, now that *Koval*—with its judicially created extreme remedy of dismissal of drunk driving cases—has been overruled, I would leave it to the Legislature to consider whether it wishes to revise MCL 257.625a(6)(d) to supply a remedy for violation of that subsection. In doing so, the Legislature should consider whether any constitutional issues exist as it balances the interest of an accused defendant, who has been provided no remedy for the violation of the statutory right to an independent chemical test, with the public safety interest in keeping impaired drivers off the roads. This is a matter of public policy that the Legislature should decide because it has the ability, unlike this Court in deciding this case, to hold public hearings and to provide an opportunity for all those holding differing views and possessing information on the wisest course to share their views and information with the Legislature.

MCL 257.625a(6)(d) provides that a defendant who takes a police-administered chemical test "shall be given a reasonable opportunity" to have an independent test by a person selected by the defendant. However, the Legislature did not specify that any remedy was available when a defendant is unreasonably denied an opportunity for an independent test. Because this Court erred in *Koval* in supplying the extreme remedy of dismissal for a violation of subsection 6(d), this Court is correct in deciding to affirmatively overrule *Koval.*

2

It is appropriate under *Robinson v Detroit*,[2] to overrule *Koval* because *Koval* was wrongly decided, and defies practical workability, and because reliance interests will not suffer undue hardship if *Koval* is overruled, and changes in the law or facts no longer justify the earlier decision. The 1963 version of the statute did not provide a remedy, but it had a mandatory requirement that the defendant be advised of his or her right to take an independent test. Because of these two factors, and because the defendant had already been convicted, the *Koval* Court apparently deemed that it had to supply a remedy and that the only available remedy was dismissal.

I note that while the *Koval* decision was rendered in the early 1960s during an era when society was not as vigilant about curtailing drinking and driving, our present-day perspective has changed remarkably. Recognizing that our Legislature has an interest in ensuring public safety by keeping impaired drivers off the roads, we must look to the language of the statute in order to discern, if possible, the legislative intent.

In determining such intent in this case, it is apparent that the Legislature was aware that it had the option of supplying some kind of remedy for a violation of subsection 6(d) because the Legislature supplied a remedy in another subsection of MCL 257.625a. Specifically, if a prosecutor fails to comply with subsection 8 of MCL 257.625a, the remedy available to a defendant for violation of that

---

[2] 462 Mich 439, 464-465; 613 NW2d 307 (2000).

3

subsection is *suppression* of the results of the state-administered chemical test.[3]

Had the Legislature intended a comparable remedy for a violation of subsection 6(d)—or even the more drastic remedy of dismissal—it could have so specified. Not only has the Legislature declined to provide a remedy for a violation of subsection 6(d), but in fact, the Legislature specified that "[t]he provisions of subsection (6) relating to chemical testing *do not limit the introduction of any other admissible evidence . . . .*"[4]

Given the absence of statutory language showing an intent by the Legislature to specify what remedy, if any, is to be imposed upon denial of this statutory right to a reasonable opportunity to obtain an independent test, and given the presence of statutory language showing an intent that a prosecutor can proceed on other nonchemical evidence, it was improper for this Court in *Koval* to rewrite the statute from the bench.

---

[3] MCL 257.625a(8) provides:

> If a chemical test described in subsection (6) is administered, the test results shall be made available to the person charged or the person's attorney upon written request to the prosecution, with a copy of the request filed with the court. The prosecution shall furnish the results at least 2 days before the day of the trial. The prosecution shall offer the test results as evidence in that trial. *Failure to fully comply with the request bars the admission of the results into evidence by the prosecution.* [Emphasis added.]

[4] MCL 257.625a(7) (emphasis added).

Now that *Koval*—with its judicially created extreme remedy of dismissal of drunk driving cases—has been overruled, the Legislature should consider whether it wishes to revise MCL 257.625a(6)(d) to supply a remedy for violation of that subsection. In doing so, the Legislature should consider whether any constitutional issues exist as it balances the interest of an accused defendant, who has been provided no remedy for the violation of the statutory right to an independent chemical test, with the public safety interest in keeping impaired drivers off the roads. This is a matter of public policy that the Legislature, not this Court, should decide because it has the ability, unlike this Court in deciding this case, to hold public hearings and to provide an opportunity for all those holding differing views and possessing information on the wisest course to share their views and information with the Legislature.

Elizabeth A. Weaver

5

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                   No.  128368

MARK JOSEPH ANSTEY,

      Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

Today the majority takes its most recent stride in eroding the statutory and constitutional rights of criminal defendants.  Despite the Legislature's clear intent to bestow the right at issue, the majority elects to divest this Court of the ability to redress a violation of the right.  Faced with a complaint that a police officer prohibited defendant from exercising his legislatively sanctioned constitutional right to an independent chemical test, the majority's magic wand of an opinion makes the right disappear.  Today's edict puts Michigan citizens on notice that when the Legislature grants an explicit right—indeed, one with a constitutional dimension—but sees fit to leave the remedy for violating that right to a court's discretion, the right is really no right at all.  The "consolation" the majority provides is the ability to tell the jury that the right was violated.  So drivers be warned:  Although our Legislature decided that you have an indelible right to a reasonably requested independent chemical test, this Court finds that if you

attempt to exercise that right, the decision whether you are permitted to do so rests solely in the hands of your jailer. If that person decides, for good reason, bad reason, or no reason at all, to deprive you of that right, so be it. Thanks to the majority's continued plod through the volumes of our law, there are no meaningful consequences to that decision, so we have now amassed another right not worth the paper the Legislature printed it on.

The Oz-like curtain behind which the majority hides is its pronouncement that because the Legislature did not provide a remedy, courts are powerless to *enforce* the statute. Rather than rectify the violation, a court can only make available a nonmandatory jury instruction that tells the jury that the right was violated, which instruction serves no remedial purpose.[1] This is in spite of the Legislature's purposeful use of the word "shall" when bestowing the right. A legislature that purposefully enacts a "mandatory" right while intending at the same time that it not be enforced would be an odd one indeed. Thus, to the trash bin goes the tenet that the job of a court is to discern and implement legislative intent because to hold that no enforcement was intended flies in the face of all logic. When the Legislature does not specify a particular remedy for violation of a mandatory right, it is incumbent on this Court to adjudicate a fair and just resolution in as best accord with legislative intent as possible. The remedy should

---

[1] The majority carefully avoids calling its proposed instruction a "remedy," although it claims that a permissive jury instruction "gives meaning" and "concrete effect" to the right. *Ante* at 21 n 22, 23.

2

*actually*, not theoretically, hypothetically, or suppositionally, rectify the violation. But instead of providing a way to truly remedy the situation of a defendant who was denied his mandatory right to an independent chemical test, the majority merely declares this Court powerless, shrouding the unreasonableness of its decision in the veil of a jury instruction of negligible force.

In direct contradiction of its oft-repeated mantra that no word in a statute can be changed or rewritten, the majority does indeed rewrite the statute of concern. MCL 257.625a(6)(d) states that a person who makes a reasonable request for an independent chemical test "*shall*" be given a reasonable opportunity to procure one. Notably, the Legislature did not choose the word "may" or "can" or "might." It chose "shall," with all its consequent mandatory implications. This Court has repeatedly held that "shall" is not permissive. See, e.g., *People v Francisco*, 474 Mich 82, 87; 711 NW2d 44 (2006); *Burton v Reed City Hosp Corp*, 471 Mich 745, 752; 691 NW2d 424 (2005); *Scarsella v Pollak*, 461 Mich 547, 549; 607 NW2d 711 (2000); *Oakland Co v Michigan*, 456 Mich 144, 154; 566 NW2d 616 (1997) (opinion by Kelly, J.). To hold that there is no meaningful remedy for violating a mandatory right directly contravenes the unambiguous rule of construction that no word in a statute can be rendered nugatory.

Preventing a court from enforcing this mandatory statute by truly remedying a violation of it not only rewrites the statute but does immeasurable violence to legislative intent. By failing to permit a meaningful remedy for a violation of the right the statute bestows, the majority changes "[you] *shall* be

3

given a reasonable opportunity" to "it does not matter if you get an opportunity, but you can ask that the jury be told if you did not." In doing so, the majority fully emasculates the Legislature's clear intent to create a mandatory requirement, for a mandatory right with no meaningful remedy for its violation is no right at all.

The majority bases its reasoning in part on the fact that in § 625a(8) of the statute, the Legislature specified a remedy for violating that subsection. *Ante* at 6. Had the Legislature intended a remedy for § 625a(6), the majority reasons, then it would have provided one like it did in § 625a(8). I am not distracted, as is the majority, by that path of least resistance, for statutory analysis is neither one-dimensional nor necessarily simplistic. When comparison to another statute does not answer the question whether a remedy was intended, this Court should not simply close the books and end the inquiry.[2] Rather, it is incumbent on us to use the additional rules and tools available to us until we discern the legislative intent. And those additional mechanisms, if used, lead to this conclusion: The Legislature is satisfied with the remedy of dismissing the charges when a defendant makes a reasonable request for an independent chemical and is denied that right.

The majority ostensibly recognizes that discerning legislative intent is the primary goal of statutory construction. *Ante* at 5. But while the majority duly

---

[2] The majority does indeed close the books on its search for legislative intent after finding no explicit remedy in the statute, despite that it continues on to craft its "nonremedy remedy" of a jury instruction. See *ante* at 16 n 17.

notes that the Legislature did not specify a remedy for violating the statute, it refuses to also consider that the Legislature has declined to repudiate the longstanding remedy of dismissal or specify some other remedy in the 12 times over 43 years that it has amended the statute since our decision in *People v Koval*, 371 Mich 453; 124 NW2d 274 (1963). In *Koval*, of course, we held that dismissal was the proper remedy for violating § 625a(6)(d).[3] It bears repeating that the Legislature is presumed to know of our case law. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991). Nonetheless, 12 times over, it has deliberately chosen to leave this Court's holding in place, while making other, at times substantial, changes to the law. Thus, it is perfectly logical, indeed, incumbent on us, to conclude that the Legislature has not sensed any urgency either in invalidating the *Koval* decision or incorporating the remedy we found prudent in *Koval* because its *intent* is being carried out through that precedent. Because the Legislature has not acted to invalidate *Koval*, despite having 12 opportunities over 43 years to do so, we must presume it is satisfied with what this Court did in that case.

---

[3] The majority mistakenly asserts that the *Koval* Court incorrectly found a remedy despite that "the text of the statute makes clear that the Legislature did not intend the remedy of dismissal to follow from a violation" of the statute. *Ante* at 10. But considering that the text of the statute conveys a mandatory right, this Court found that dismissal was appropriate. Although the majority tries desperately to do so, the mandatory nature of the right simply cannot be separated from the determination of what remedy exists for violating the right.

5

In stark contrast to this majority, our United States Supreme Court recognizes that the reenactment doctrine is a legitimate tool to assist in determining legislative intent. *Central Bank of Denver, NA v First Interstate Bank of Denver, NA*, 511 US 164, 185; 114 S Ct 1439; 128 L Ed 2d 119 (1994) ("When Congress reenacts statutory language that has been given a consistent judicial construction, we often adhere to that construction in interpreting the reenacted statutory language. See, *e.g.*, *Keene Corp* v. *United States*, 508 U.S. 200, 212-213 [113 S Ct 2035; 124 L Ed 2d 118] [1993]; *Pierce* v. *Underwood*, 487 U.S. 552, 567 [108 S Ct 2541; 101 L Ed 2d 490] [1988]; *Lorillard* v. *Pons*, 434 U.S. 575, 580-581 [98 S Ct 866; 55 L Ed 2d 40] [1978]."). See also *United States v Rutherford*, 442 US 544, 554, 554 n 10; 99 S Ct 2470; 61 L Ed 2d 68 (1979). The majority's choice to ignore, and alternatively misapply, the reenactment doctrine plainly illustrates that it is not interested in truly discerning legislative intent but is satisfied with reaching a decision using less than all available mechanisms. Unjustifiably, the majority deprives a defendant of an ability to have a violation of his or her rights rectified merely because it has a personal aversion to the widely utilized reenactment rule. But applying this perfectly applicable tool of statutory construction not only provides needed interpretive assistance, but also assists in reaching a conclusion that is indubitably more logical than the one reached by the majority. Put another way, the majority's refusal to account for the Legislature's decision not to invalidate *Koval* through its multiple reenactments results in a holding that a defendant given a mandatory right has no meaningful remedy for its

violation. But taking into account the Legislature's choice not to change the result in *Koval* in its 12 reenactments of the statute since that 1963 decision results in the inescapably more sensible conclusion that a remedy does indeed exist, and that the remedy is that which this Court set forth in *Koval*. Misguided by its view that the Legislature would be so inefficient so as to fail to correct an erroneous interpretation of the law, this majority chooses to disregard rules of statutory construction to deprive drivers of a mandatory right.

In addition, the majority fundamentally misunderstands the workings of the reenactment doctrine by misapplying its statements in *Neal v Wilkes*, 470 Mich 661, 668 n 11; 685 NW2d 648 (2004). The majority claims that the reenactment doctrine is inapplicable here because "the amendments to MCL 257.625a(6)(d) do not clearly demonstrate through words the Legislature's intention to adopt or repudiate *Koval*'s interpretation of the statute." *Ante* at 8 n 7. The majority misses the point: The Legislature's failure to repudiate *Koval* in any of the 12 amendments to the statute *is* the clear indication that it accepted *Koval*. If the majority means that there must be some overt wording to that effect, then the majority renders the reenactment doctrine completely useless because obviously the Legislature's intent would then be clear from its words, and no determination whether it meant to adopt or repudiate the case would be necessary.

Along the same lines, the majority states that I disregard "the rule of statutory construction that courts cannot assume that the Legislature *inadvertently omitted language* from one portion of the statute that it placed in another portion

7

of the statute." *Ante* at 8 n 7 (emphasis added). First, I do not believe that the Legislature "inadvertently" omitted anything. Rather, in accord with the widely used reenactment doctrine, I conclude that the Legislature very advertently accepted the remedy we found necessary in *Koval*. Moreover, I choose not to rely solely on the rule of statutory construction the majority cites at the expense of ignoring other applicable rules that can aid in the analysis. The majority's selective use of rules of construction is transparent.

Further, the majority cites *Neal* for the proposition that the reenactment doctrine is a useful tool of statutory interpretation when statutory language is ambiguous. *Ante* at 8 n 7. The majority must believe that the language of the statute at issue here is ambiguous because it sanctions a jury instruction despite recognizing that none is clearly permitted in the language of the statute. I, too, believe that the remedy to be afforded a defendant who is divested of his mandatory right was initially left ambiguous by the Legislature. The difference in the approach taken by the majority and the dissent is that the majority ignores an applicable rule of construction that would lead to the conclusion that dismissal is the proper remedy, while I would employ it. Clearly, the majority's attempt to circumvent the reenactment doctrine is not soundly based.

The majority also unconvincingly attempts to disclaim that an important consideration in this case is the mandatory nature of the right to an independent chemical test. See *ante* at 8 n 7. I fail to see how we can determine what remedy best alleviates a violation of this right without first determining the level of

8

entitlement to the right. For instance, if the police had discretionary authority to honor a request for an independent chemical test (and if there were no constitutional ramifications of a denial of that right), then it is by no means certain that the proper remedy would be dismissal. But the fact that the Legislature made this right mandatory weighs, or should weigh, heavily on the analysis.

The majority also asserts a correlation between this case and *People v Sobczak-Obetts*, 463 Mich 687; 625 NW2d 764 (2001), relying on that case to avoid finding an available remedy for the current defendant. In *Sobczak-Obetts*, the police violated MCL 780.654 and 780.655 by failing to produce an affidavit with the otherwise valid warrant used to search the defendant's home. Notably, the defendant never argued that she was deprived of a constitutional right. See *Sobczak-Obetts*, *supra* at 697 n 9. In the Court of Appeals, the statutory requirement of producing the affidavit was characterized as "'more of a ministerial duty than a right'" and "'only barely relat[ing] to the substantive right the Legislature is seeking to protect.'" *Id.* at 693, quoting 238 Mich App 495, 503-504 (Hoekstra, J.). The majority agreed with that description, elaborating that the statutory requirement is a "*procedural* requirement[] that [is] to be followed by the police during and after the *execution* of an otherwise facially valid search warrant." *Sobczak-Obetts*, *supra* at 707-708 (emphasis in original). The requirement of producing the affidavit, in the majority's view, was "ministerial," *id.* at 710, "administrative," *id.*, and "technical," *id.* at 712. Thus, because the majority found that there was no legislative support for suppressing the fruit of a

9

search when the police had committed a violation that was "technical," did not diminish the probable cause for the search, and did not violate the defendant's constitutional rights, the majority declined to provide a remedy.

Despite whether one agrees with the majority's analysis in *Sobczak-Obetts*, any reliance on that case is drastically misplaced. The right bestowed by MCL 257.625a(6)(d) is hardly "technical," "ministerial," or "procedural." Rather, exercising the right to an independent chemical test under § 625a(6)(d) to gather physical bodily evidence is the *only* way a physically restrained drunk driving suspect can obtain such evidence. Moreover, and just as important, that independent test result is the *only* evidence available to a defendant to refute evidence the police gather by taking their own chemical tests. Equally important, the evidence is perishable, so once the extremely short window of time in which a defendant can obtain the evidence elapses, that evidence is forever unavailable. The result is that the defendant is left with *absolutely no meaningful way to refute the prosecutor's chemical evidence against him in a criminal trial*. See, e.g., *State v Minkoff*, 308 Mont 248, 253-255; 42 P3d 223 (2002), discussed later in this opinion.

The majority's assertion that, in lieu of using the results of the independent chemical test a defendant was deprived of obtaining, the defendant can simply "adduce nonchemical evidence, such as the testimony of a toxicology expert, who can give an expert opinion on the defendant's body alcohol level based on the number of drinks the defendant consumed over a course of time," *ante* at 18 n 20,

10

is simply unpersuasive. Not only does that idea ignore the uncorrelative character of the different types of evidence, but the notion that a person's body alcohol level can be prognosticated on other bases is similar to the "deceptively simple process" of retrograde extrapolation, see Bostic, *Alcohol-related offenses: Retrograde extrapolation after* Wager, 79 Mich B J 668 (2000), and presents the same problems. The discussion in J. Nicholas Bostic's article illuminates the significant debate within the scientific community over the reliability of prognosticated evidence. *Id.* at 669. This is because the "variability in the human response to alcohol (ethanol)" is "exacerbated by the difficulties in measuring the effects of alcohol on the human body and of human enzymes on alcohol." While a lengthy recapitulation of the article is unnecessary here, the complexities involved in attempting to divine a person's body alcohol level through nonchemical means should not be underestimated. Among the factors bearing on the analysis are the timing of the onset of the postabsorptive stage, elimination rates, the effect of food on the postabsorptive onset, frequency of alcohol use, race, gender, interindividual differences, intraindividual differences, pathological conditions, and acid-blocking drugs.

As the article's citation of various studies illustrates, for any expert or study that one side can offer to support a particular premise, the other side is likely to be able to offer an expert or study that directly refutes that premise. Moreover, as the article also illustrates, while there may be a relatively consistent range of accuracy

in extrapolation, it is, nonetheless, a *range*.[4]  But when a defendant is trying to prove that his body alcohol level did not exceed a very precise statutorily proscribed level, namely, 0.08 grams of alcohol per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine, it is of little help that an expert might be able to demonstrate a range into which the defendant's body alcohol level likely fell.  Thus, it is hardly consoling for the majority to pronounce that a defendant can simply offer expert testimony on his body alcohol level "based on the number of drinks the defendant consumed" or that "[t]he instruction gives the defendant an adequate opportunity to defend himself by arguing that the police-administered test was inaccurate and that an independent test would have produced a different result."  *Ante* at 18 n 20, 20 n 21.  Despite what nonchemical

_____

[4] The same is true with respect to the majority's citation of *State v Vliet*, 95 Hawaii 94; 19 P3d 42 (2001).  See *ante* at 18 n 20.  Despite whether that court found the "Widmark formula" admissible, and despite whether the formula can be said to be widely reliable, this inequitable fact remains unchanged:  a defendant is left to rebut chemical evidence with nonchemical extrapolation evidence despite the fact that he was entitled to obtain chemical evidence and was denied his right by the police.

By claiming that that situation is remedied because nonchemical evidence of a body alcohol range can raise a reasonable doubt in a defendant's favor, the majority does not seem to grasp the unbalanced position into which it places a defendant.  Nothing a defendant produces in this regard will go unrebutted by the prosecutor's own witnesses.  So to edge out any reasonable doubt created by a defense expert who can testify to a "range" into which the defendant's body alcohol level *may have fallen*, a prosecutor will be armed with eyewitness observation evidence, field sobriety test results, a rebuttal expert for any nonchemical evidence the defendant produces, and, critically, *the indisputable results of a chemical test*.  Undeniably, the scales of justice are tilted heavily in the prosecutor's favor.

12

evidence the defendant can find to produce, the prosecutor will hold the clear advantage in that not only can he rebut any nonchemical evidence with expert testimony, but he alone possesses the results of a *chemical* test to which the defendant has no rebuttal at all.

Further, despite Justice Corrigan's interpretation of the principles she cites from three writings of her late husband and a foreword by Justice Markman, see *ante* at 19-20, I fail to see how the truth-seeking process is enhanced or furthered by not only denying a defendant's mandatory right to gather evidence in his defense, but also allowing the prosecutor to present evidence that the state has made impossible for the defendant to rebut. I do not believe this is the type of "truth-seeking process" envisioned by either the framers of our constitutions or by commentators on the criminal justice system. In fact, a passage quoted by Justice Corrigan belies her assertions that a jury instruction is sufficient to protect a defendant's right to a fair trial when the right denied defendant deprives him of "'an adequate opportunity to defend against the charges.'" See *ante* at 20, quoting Grano, *Implementing the objectives of procedural reform: The proposed Michigan Rules of Criminal Procedure–Part I*, 32 Wayne L R 1007, 1018 (1986). Professor Joseph D. Grano was completely correct when he wrote the words Justice Corrigan quotes:

> "[T]he primary objective of criminal procedure is to facilitate the ascertainment of truth. To some extent, therefore, *fairness must encompass this concern.* Accordingly, *rules are unfair when they do not provide either party an adequate opportunity to develop and present his case*. The special concern with fairness for the

13

defendant, however, stems from the special abhorrence of erroneous conviction. Thus, *basic agreement exists that a rule is unfair if it denies the defendant an adequate opportunity to defend against the charges*." [*Ante* at 20, quoting Grano, *supra* at 1018 (emphasis added).]

It is for the reasons Professor Grano outlined that the majority is misguided in asserting that dismissal is an inappropriate remedy because "the truth will never be discovered." See *ante* at 20 n 21. Simply, denying a defendant's right to obtain evidence[5] in his defense also prevents the truth from ever being discovered and exposes a defendant to the possibility of being wrongfully convicted, despite the "special concern for fairness" and "special abhorrence of erroneous conviction" identified by Professor Grano. And therein lies the fundamental difference of approach. While the majority favors rewarding the deprivation of the right to obtain evidence by proceeding with trial and exposing the defendant to wrongful conviction to further what it perceives as the "truth-seeking process," I favor a meaningful remedy that encourages the police to act according to a

---

[5] Oddly, the majority concludes that informing the jury that a defendant was denied his right to an independent test "plac[es] all the facts before the fact-finder," provides "more, rather than less, information," "communicate[s] an accurate account of what transpired," and "gives the jury all of the available relevant information." See *ante* at 20 n 21, 21. The majority also asserts that the instruction informs the jury of "*all* the pertinent information, including what has been denied to them [sic]." *Ante* at 21. These propositions are simply incorrect. The "pertinent information" that is not placed before the jury is the results of an independent chemical test. The jury is denied this information and, thus, denied its right to *all* the facts. The jury thus receives less information than that to which it was entitled and is left with an incomplete account of transpired events. The majority's insistence that a permissive jury instruction furthers the truth-seeking process is simply backward logic.

14

mandatory statute,[6] which in turn *protects* a defendant's right to a fair trial. This, in my view, is the more constitutionally sound fostering of the truth-seeking process.

It can be no clearer that a defendant's Sixth Amendment right to present a full defense is implicated when he is deprived of his codified right to an independent chemical test.[7] While the right to the test has been codified, the violation of the right is an unconstitutional deprivation of a defendant's right to a fair trial. Indeed, the intent behind § 625a(6)(d) further demonstrates that the

---

[6] The majority's claim that the permissive jury instruction will "accord meaning to the right" and "deter police officers from violating that right" is ridiculous. See *ante* at 13. First, nothing about alerting the jury that a person was deprived of an ability to obtain an independent chemical test "accords meaning" to the right embodied in the statute. Simply, a jury instruction is "too little, too late." Second, the majority's rule of law actually *encourages* police officers to decline a person's request for an independent test because not only are there are no meaningful *negative* consequences to that decision, but the police are put in a *superior* position because they will hold the trump card of indisputable chemical evidence. In this way, police officers are indeed "permit[ted] . . . to ignore a defendant's mandatory statutory right . . . ." See *ante* at 22.

Not surprisingly, the majority disagrees with this assessment, but again, the majority's simplistic and idealistic view fails to account for the real-world practicalities about the way in which these scenarios will play out. See n 4 of this opinion. Moreover, because the defendant was denied his constitutional right to an independent test, speculation regarding whether the test would have been favorable to him is unhelpful. The very point is that the jury will never know because the defendant was denied his constitutional right to obtain the evidence.

[7] I address this argument only because the trial court expressed in its opinion its belief that the right at issue was constitutional in nature. The trial court found it unnecessary to base its holding on constitutional principles because it found that the remedy of dismissal was clearly called for. However, it clearly considered the statutory right merely a codification of a due process right. Thus, I find that it would be judicially inefficient to not address this issue.

15

Legislature never meant to afford one party scientific evidence while denying the other party an ability to independently obtain the same, thus further rebutting the majority's assertion, *ante* at 20 n 21, that a jury instruction sufficiently assists the "truth-seeking process":

> The intent of the Legislature in enacting MCL 257.625a(5); MSA 9.2325(1)(5) was to allow the production and preservation of chemical evidence in an orderly manner. *Broadwell v Secretary of State*, 158 Mich App 681, 686; 405 NW2d 120 (1987). The petitioner in *Broadwell* argued that he was entitled to have a person of his choosing administer the test without first being subjected to a chemical test by the police officer. However, this Court found that such a construction of the statute would place the only scientific evidence of chemical impairment within the petitioner's sole disposal, contrary to the legislative intent of the statute. *Id.* In *People v Koval*, 371 Mich 453, 458; 124 NW2d 274 (1963), our Supreme Court found that the then existing statute, which does not significantly differ from the current one, was enacted for the protection and benefit of motorists charged with driving while under the influence of intoxicating liquor. Thus, it may be said that *the Legislature intended that the scientific evidence shall not be at the sole disposal of either party*, and it ensured this result by allowing police to administer one test and allowing the accused to choose an independent person to administer a second chemical test. [*People v Dicks*, 190 Mich App 694, 698-699; 476 NW2d 500 (1991) (emphasis added).]

Further, the majority's centering of its analysis on its characterization that the evidence defendant was deprived, namely, an independent chemical test of his body alcohol level, of was evidence that had not yet been "developed" is simply a game of semantics. See *ante* at 25. For despite the majority's strenuous attempt to minimize the importance of the right or the subsequent significance of the evidence, the fact remains that defendant had a due process right to obtain the evidence, whether that entailed "creating" it, "developing" it, or any other way of

getting it, however stated. Simply, defendant sought to exercise his mandatory right to procure independent chemical testing, and, thus, documentation, of his already-existing body alcohol level at the time he was taken into custody. And he sought to exercise this right because the Legislature penned a statute that grants the right to do so. When the majority's fallacy of logic is exposed, its constitutional analysis falls apart.

The correct conclusion, and one that the trial court reached, is that the right at issue, though codified through statute, implicates a defendant's constitutional right when violated. Simply, refusing the defendant an opportunity for an independent chemical test "'is to deny him the only opportunity he has to defend himself against the charge.'" *People v Dawson*, 184 Cal App 2d Supp 881, 882; 7 Cal Rptr 384 (Cal Super App Dep't, 1960), quoting *In re Newbern*, 175 Cal App 2d 862, 866; 1 Cal Rptr 80 (1959). "[T]he accused has an absolute right to secure witnesses and obtain additional evidence to counteract the evidence obtained by the government, to establish a defense and to seek an acquittal. To hold otherwise is to return to the rack and the stake." *State v Myers*, 88 NM 16, 23; 536 P2d 280 (NM App, 1975) (Sutin, J., dissenting) (emphasis omitted).

Attempting to bolster its conclusions, the majority selectively extracts the following statement from *Arizona v Youngblood*, 488 US 51, 59; 109 S Ct 333; 102 L Ed 2d 281 (1988): "'[T]he defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a

17

constitutional duty to perform any particular tests.'" *Ante* at 26 n 26.[8]  One need only view the excised statement in the context of the material from which it was extracted to reject the majority's curious reliance:

> The Arizona Court of Appeals also referred somewhat obliquely to the State's "inability to quantitatively test" certain semen samples with the newer P-30 test.  153 Ariz., at 54, 734 P. 2d, at 596.  If the court meant by this statement that the Due Process Clause is violated when the police fail to use a particular investigatory tool, we strongly disagree.  The situation here is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests. [*Youngblood*, *supra* at 58-59.]

As the reader can see, *Youngblood* did not involve body alcohol level testing and it did not involve a statutory right to testing.  Clearly, the *Youngblood* Court was in no way commenting on the due process rights that arise when a defendant is denied a mandatory right to obtain independent testing of his body alcohol level.

In another citation that is inaccurate at best, the majority states that in *In re Martin*, 58 Cal 2d 509; 374 P2d 801; 24 Cal Rptr 833 (1962), the court held "that the police are not required to assist a defendant in obtaining a chemical test," and

---

[8] In my opinion, to speak in terms of a police officer's "constitutional duty" obfuscates the issue and detracts from the true question involved.  Thus, I believe the question is more accurately addressed in terms of whether a *defendant's* constitutional rights are violated when the police fail to comply with their *statutory* duty to permit a defendant an opportunity to obtain an independent chemical test.  While not dispositive of the analysis, those terms avoid overshadowing that it is indeed *a defendant's constitutional right* under scrutiny.

that "'police officers are not required to take the initiative or even to assist in procuring evidence on behalf of a defendant which is deemed necessary to his defense.'" *Ante* at 26, quoting *Martin*, *supra* at 512. What the majority omits to tell the reader is that there was no statute that mandated the police to allow a person an opportunity for independent chemical testing. What the majority also omits to mention is that the defendant in *Martin* "was released within minutes after his 'booking' at the police station." *Martin*, *supra* at 512. Because of his fast release, the court concluded that "[n]o meritorious claim can be made that [the defendant] could not, at that time, have obtained a timely sampling if unhampered." *Id.*

Similarly, the majority mistakenly relies on *State v Choate*, 667 SW2d 111, 113 (Tenn Crim App, 1983), for the proposition that "the police have no constitutional duty to take affirmative action to transport the defendant from the place of his or her incarceration to a hospital of his or her choice for the requested test." *Ante* at 27. Important, but ignored by the majority, is that the state statute at issue in that case required the suspect to submit to a police-administered chemical test, and the defendant had refused to take that test. *Choate*, *supra* at 111-112. The court could not find a due process violation, reasoning as follows:

> *Since he refused to take the breathalyzer test*, the police took no affirmative steps to assist the defendant in obtaining a blood sample. However, the defendant *was not hampered or prevented by the police from obtaining a blood test*, and he made no effort himself to arrange for a blood test although he had access to a telephone and was accompanied by a friend to the police station. [*Id.* at 112 (emphasis added).]

19

The same misplaced reliance is seen in the majority's citation of *People v Finnegan*, 85 NY2d 53, 58; 623 NYS2d 546; 647 NE2d 758 (1995). In *Finnegan*, the state statute allowed for an independent chemical test, but put no obligation on the police to assist suspects with obtaining the test. The statute stated: "Right to additional test. The person tested shall be permitted to choose a physician to administer a chemical test in addition to the one administered at the direction of the police officer." Veh & Traf Law 1194(4)(b). To the contrary, our statute states, "A person who takes a chemical test administered at a peace officer's request as provided in this section *shall be given a reasonable opportunity* to have a person of his or her own choosing administer 1 of the chemical tests described in this subsection within a reasonable time after his or her detention." MCL 257.625a(6)(d). Thus, by its plain words, the statute requires some affirmative action on the part of the police. For the majority to rely on *Finnegan* to excuse the police officer's violation of defendant's right in this case is simply misguided. What the majority is actually asserting is that our statute places no duty on the police to assist a person who the police holds in custody by honoring the person's reasonable request to obtain an independent chemical test. Such an assertion rewrites the statute of concern.

As is evident by the above, the majority takes a painfully circuitous journey to reach what is ultimately a conclusion that there is no meaning to the right codified in § 625a(6)(d), and, thus, no purpose to the statute at all. The majority pronounces that there is no available remedy when a statute providing a mandatory

20

right is violated and that the police have no "constitutional duty," *ante* at 25-27, to follow the statute. Moreover, in deciding that defendant was not deprived of his constitutional right to an independent chemical test, the majority engages in a pretense. It concludes that the police were not obligated to assist defendant with obtaining an independent chemical test. This is simply incorrect and illuminates that the majority again fundamentally misunderstands the crux of the right at issue.

*Minkoff* provides a thorough and well-reasoned discussion regarding the due process implications of interfering with a defendant's right to obtain an independent test. In *Minkoff*, the defendant, rather than requesting a test, asked the police officer for the officer's advice regarding whether he should obtain an independent test. *Id.* at 249. The officer told the defendant that a blood test "'comes out with the exact amount and it's going to be higher than what the breath test is.'" *Id.* Accordingly, the defendant "did not request an independent blood test." *Id.* at 250. Deciding whether the defendant's due process argument that the officer "frustrated" his right to obtain an independent test had merit, the court provided the following fundamental principles:

> It is undisputed that a person accused of a criminal offense has a due process right to obtain existing exculpatory evidence. See *State v. Swanson* (1986), 222 Mont. 357, 360, 722 P.2d 1155, 1157. It also is undisputed that, when the charged offense is DUI, the accused has a right to obtain a test of the amount of alcohol in his or her blood independent of the test offered by the arresting officer, without regard to whether the accused has taken or rejected the offered test. *Swanson*, 222 Mont. at 360-61, 722 P.2d at 1157. Finally, it is undisputed that, while a law enforcement officer has no duty to affirmatively assist a person accused of DUI in obtaining an independent blood test, the officer cannot frustrate or impede the

21

person's efforts to do so. See *Swanson*, 222 Mont. at 361, 722 P.2d at 1157-58. Moreover, we have held that the accused must be informed of his or her right to independent testing and that failure to so advise is a due process violation. *State v. Strand* (1997), 286 Mont. 122, 127, 951 P.2d 552, 555.

In the present case, the District Court relied on [*State v*] *Sidmore* [286 Mont 357; 951 P2d 558 (1997)] in denying Minkoff's motion to dismiss. There, we clarified and, in fact, limited "the *Swanson* rule" that a DUI accused has a due process right to an independent blood test. We held that two criteria must be established to support an allegation of denial of due process rights with regard to the right to an independent test: (1) the accused must timely request the independent test, and (2) the officer must unreasonably impede the right to the test. *Sidmore*, 286 Mont. at 234-35, 951 P.2d at 568-69. Here, Minkoff did not request the independent test and, therefore, on the face of it, the District Court did not err in concluding that the *Sidmore* criteria had not been met. [*Id.* at 250-251.]

The court then considered the defendant's arguments that the officer unreasonably impeded his opportunity to obtain an independent test, and concluded that the officer did indeed do so:

We have held that, while police have no duty to assist an accused in obtaining independent evidence of sobriety, "they cannot frustrate such an effort through either affirmative acts or their rules and regulations." *Swanson*, 222 Mont. at 361-62, 722 P.2d at 1158 (*see also* § 61-8-405(2), MCA, "The peace officer may not unreasonably impede the person's right to obtain an independent blood test"). Here, the officer's repeated statements that the blood test would show a higher blood alcohol level, albeit well-intentioned, were affirmative acts which would frustrate, if not obliterate, the intention of any rational arrestee to obtain an independent blood test. Rare, indeed, would be the person who would persist in asking for an independent blood test after being advised—twice—that the amount of alcohol in the blood test result would show as higher than the amount in the offered breath test. We conclude that the officer's advice frustrated and unreasonably impeded Minkoff's due process right to the independent blood test. [*Id*. at 252.]

Finally, on the basis of the severely uneven footing on which the deprivation of the opportunity to obtain an independent chemical test placed the defendant, the court overruled its prior case law that held that suppression of the evidence was a sufficient remedy and concluded that the only constitutionally sufficient remedy was dismissal of the charges. See *id.* at 253-255.

No case cited in the majority's labored opinion either considered or addressed whether a person's due process rights are violated when that person submits to a required police-administered chemical test but is nonetheless denied a reasonable request for a statutorily required independent chemical test. But there is no shortage of states in which the deprivation of the right to an independent chemical test *has* been found to (1) be unconstitutional and (2) require dismissal of the charges. See Anno: Drunk driving: Motorist's right to private sobriety test, 45 ALR4th 11. In Georgia, the court of appeals questioned the use, without enforcement, of a rule requiring a police officer to grant a reasonable request for an independent chemical test: "But of what value is that right if the accused is in custody of law enforcement officials who either refuse or fail to allow him to exercise the right?" *Puett v State*, 147 Ga App 300, 301; 248 SE2d 560 (1978). An Arizona court, faced with a prosecutor's argument that the defendant had no right to an independent test unless he first took a police-initiated test, explained:

> If the [prosecutor's] contention was correct, the logical conclusion would be that the police could affirmatively prohibit every driver who refused a breathalyzer test from obtaining independent evidence of his sobriety, in essence suppressing evidence favorable to the defendant. Such a result would be

23

violative of due process of law. [*Smith v Cada*, 114 Ariz 510, 512; 562 P2d 390 (Ariz App, 1977) (staying the prosecution on charges related to intoxicated driving).]

Further, in *Provo City v Werner*, 810 P2d 469 (Utah App, 1991), the court highlighted the due process concerns inherent in a defendant's right to an independent chemical test. That court stated:

> Similarly, *all that is required to provide due process is an opportunity to obtain an independent test.* "The purpose of due process is to prevent fundamental unfairness, and one of its essential elements is the *opportunity* to defend." *State v. Snipes*, 478 S.W.2d 299, 303 (Mo.), *cert. denied*, 409 U.S. 979, 93 S.Ct. 332, 34 L.Ed.2d 242 (1972). "*The issue is whether the defendant was afforded a reasonable opportunity to obtain an independent examination*; it is not necessary that such an examination in fact be conducted." *Commonwealth v. Alano*, 388 Mass. 871, 448 N.E.2d 1122, 1127 (1983). *See also Bilbrey v. State*, 531 So.2d 27, 30 (Ala. Ct. App. 1987) (defendant must prove by clear and convincing evidence that the conduct of the police was unreasonable in order to establish a due process violation). [*Id.* at 472 (emphasis added).]

Again, by its conclusion that the police did all they were required to do and had no further duty, the majority has changed the language of the statute and rewritten an otherwise plainly worded requirement to eliminate any duty of the police to actually *honor* the reasonable request of a person attempting to obtain independent chemical evidence. See *ante* at 26 n 27.

If it is to be given any meaning at all, the statute clearly requires the police to assist in some way when a person attempts to exercise his right to obtain an independent chemical test. Here, of course, the police outright refused to take defendant where he asked to go, a decision that the prosecutor in this case has

24

agreed was unjustifiable. Defendant's due process right to obtain the test was clearly violated.

Further, not punishing a violation of the statute with the strict remedy of dismissal and allowing the prosecution to go forward with the charges will enable a completely one-sided presentation of the evidence, even if the results of the police-initiated test are suppressed. By disallowing an independent chemical test, the police benefit from a win-win situation. Without scientific evidence, the prosecutor can easily persuade a jury with the police officer's observation evidence. A defendant can counter that testimony with absolutely nothing but his word.

As a Tennessee court succinctly explained, "We do not believe that simply suppressing the State's blood alcohol test is a sufficient safeguard of the Defendant's right to be able to gather and preserve evidence in his defense. This evidence, if favorable to the Defendant, could easily have secured his acquittal." *State v Livesay*, 941 SW2d 63, 66 (Tenn Crim App, 1996). And in Washington, the appellate court likewise rejected an argument for suppression of the results of the police-administered test as an adequate remedy. That court's reasoning bears repeating:

> The State contends the proper remedy for violation of Mr. McNichols' right to obtain an independent blood test is suppression of the State's breath test results. It argues the purpose of the independent test is to contest the accuracy of the State's breath test; therefore, if a defendant is unfairly deprived of an opportunity to challenge the State's test results, denying use of those results levels

the playing field and leaves the defendant free to contest any other evidence of intoxication introduced by the State.

We recognize dismissal is an extraordinary remedy, which is unwarranted when suppression of evidence will eliminate any prejudice caused by governmental misconduct. . . . Suppression is inadequate in the present case.

In a DWI case the defendant's condition at the time of his arrest is critical to his defense. To defend against the charge against him, Mr. McNichols would have to present evidence that he was not under the influence of intoxicating liquor at the time of his arrest. That is true regardless whether the State introduces BAC test results or other evidence of intoxication. The State's interference with Mr. McNichols' right to obtain an independent alcohol concentration test foreclosed a fair trial by forever depriving him of material evidence which could potentially have supported a claim that he was innocent. Suppression of the State's BAC test results would not eliminate the prejudice because a favorable blood test is reliable evidence of nonintoxication that could be used to defend against other proof of intoxication. Because the error cannot be remedied by a new trial, dismissal is the appropriate remedy. [*State v McNichols*, 76 Wash App 283, 289-291; 884 P2d 620 (1994) (citations omitted).][9]

Finally, in *Minkoff* the court aptly explained why no remedy other than

dismissal would rectify the constitutional violation:

In *Strand*, the issue of dismissal, as urged by the defendant, versus suppression, as argued by the state, was squarely before us. As discussed above, we opted for suppression and, in doing so, distinguished *Swanson* on the facts regarding whether the state's offered breath test had been taken or refused. In discussing the appropriate remedy in *Strand*, however, we made several statements on which we did not follow through. In that regard, while we relied on a Washington Supreme Court case for the proposition that the

---

[9] While the Washington Supreme Court overturned this case on the basis that jail personnel did not interfere with the defendant's right to get an independent blood test, the Supreme Court agreed with the Court of Appeals that the right was a due process right. *State v McNichols*, 128 Wash 2d 242; 906 P2d 329 (1995).

state cannot be permitted to use scientific evidence of intoxication which the defendant is unable to rebut because he was not apprised of his right to independent testing, we also stated that, while independent blood test results have value as rebuttal-type evidence to the state's evidence, such results also "have independent value as compelling scientific evidence, regardless of the evidence introduced by the State." *Strand*, 286 Mont. at 128, 951 P.2d at 555 (citation omitted). We discussed the possibility that a defendant might elect not to challenge potentially intoxication-related observations by the officer or field sobriety test results, but might produce—if given the opportunity—a scientific blood test conclusively showing a blood alcohol concentration below the legal limit. *Strand*, 286 Mont. at 128, 951 P.2d at 555-56. Had we followed through on these statements, rather than limiting our focus to the question of "like evidence," dismissal would have been the appropriate remedy.

Here, the State admitted Minkoff's .167 blood alcohol content as evidence during the jury trial. It also presented the arresting officer's testimony and videotape evidence on Minkoff's performance on field sobriety tests: he did not successfully recite the alphabet after the letter "T"; he swayed during the one-legged stand and put his hand on a door as a brace; and, during the walk and turn test, he stepped off the line, nearly fell over, and took more steps than he was instructed to take. Suppressing the State's breath test and allowing a new trial would leave Minkoff unable to rebut the field sobriety test evidence through an independent blood test—the right to which he was effectively denied. We conclude suppression of the breath test results is insufficient to remedy the deprivation of that right and, accordingly, we overrule the remedy set forth in *Strand*. [*Minkoff*, *supra* at 254.]

I find these concepts highly persuasive. Neither ignoring the constitutional violation nor allowing for suppression of the results of the state's chemical test will rectify the violation or put a defendant on equal footing with that of his accuser. Rather, a police officer can unilaterally place a defendant in a position from which he can never recover—namely, completely without chemical evidence to use to defend against the prosecutor's chemical evidence. And an officer's good or bad faith has no bearing on the fact that the defendant is still deprived of

27

the only exculpatory evidence that he might possibly obtain. "This is not a case simply of 'justice' or 'fairness', in the abstract. Denial to defendant of the opportunity to conduct his own blood test was a denial of access to evidence he might have introduced in his own defense. For this reason, it is a denial of his constitutionally guaranteed due process of law." *Myers*, *supra* at 24. Thus, in my view, nothing less than dismissal cures the violation, for there is no other way to ensure a defendant's Sixth Amendment right to a fair trial.

A toothless jury instruction designed merely to inform the jury that the right was violated does nothing but elevate the prosecutor's position over that of the defendant and cannot be any further from adequate. The majority's proclamation that the case must go forward to preserve the quest for "truth" is simply unpersuasive when the truth-seeking process was deliberately thwarted by the state and resulted in categorically denying defendant the ability to bring any meaningful evidence in his defense. Under the majority's indiscriminate elevation of its distorted view of the "truth-seeking process" over constitutional due process rights, no constitutional violation will ever merit the dismissal of a case or even suppression of evidence.

I would find that depriving a driver of the mandatory right to an independent chemical test is a due process violation for which dismissal of the charges is the only remedy. To hold otherwise is to not only ignore the clearly

28

mandatory nature of the statute, but to disregard the constitutional implications of its violation. For these reasons, I respectfully dissent.

Michael F. Cavanagh
Marilyn Kelly